[Kansas City, M. & B. R. R. Co. v̇. Sanders.]

# Kansas City, M. & B. R. R. Co. v. Sanders.

*Action Against Railroad Company for Damages for Negligently Causing Death of Passenger by Collision.*

| 98 | 293 |
|----|-----|
| 98 | 167 |
| 98 | 293 |
| 101 | 48 |
| 98 | 293 |
| 116 | 515 |
| 98 | 293 |
| 142 | 308 |
| 98 | 293 |
| 144 | 309 |

1. *Sec. 4485 of Code, has no application to civil actions.*—The Act, (Sec. 4485 of Code), has no bearing on civil cases, but refers only to indictable offenses. A refusal of the trial court to grant a change of venue in a civil action is not revisable on appeal to this court.

2. *Assessment of damages on judgment Nil dicit.*—Where, in an action for damages against a railroad company for negligence in killing a passenger, the defendant withdraws its pleas and suffers judgment *nil dicit*, and contests only the *amount* of damages, the jury, in assessing damages, may consider any negligence on the part of the defendant or its employees which is counted on in the complaint, and which tended to produce the injury.

3. *Successive acts of negligence.*—Where there are successive acts of negligence on the part of the employees of the defendant corporation, resulting ultimately in injury to a passenger, the jury may, in determining the degree of culpability of the defendant, look to the chain of causation of the wrong done for which they are to fix the amount of damages.

4. *Acts tending to show negligence.*—Where the evidence shows that the watchman at the depot in Birmingham, and the conductor of defendant corporation's train wore the same uniform, were supplied with the same kind of lanterns for signalling purposes, and that they had the same signal for moving out trains, whether to move out of the way of another train, or go on its way to a distant point; and that by reason of this similarity the engineer mistook the signal of the watchman for that of his conductor, and moved his train out and started on his journey over the road—this evidence tends to show negligence on the part of the defendant.

5. *Proof admissible under averment.*—The averment in a complaint that the "defendant negligently conducted itself in and about the carrying of plaintiff's intestate," is broad enough to cover the omission of any duty which the carrier owed to the passenger, including the employment of competent, skillful and careful servants.

6. *Corporate negligence.*—As to passengers injured by the negligence of the employees of a railroad company, there is no negligence of the employee which is not the negligence of the corporation. The negligence of the servant in such case is the negligence of the master.

7. *Charge properly refused, and afterwards given by consent.*—Where a charge asked by the defendant is properly refused by the Court, and afterwards, by consent of the plaintiff, given, this action of the Court furnishes no ground of error to defendant.

8. *Pendency of other actions in abating damages.*—In an action against a railroad company for negligently causing the death of a passenger, a charge requested by the defendant that the jury in assessing the damages might consider the fact of the pendency of other suits against the defendant resulting from the same cause of action, is properly refused.

[Kansas City, M. & B. R. R. Co. v. Sanders.]

APPEAL from Walker Circuit Court.

Tried before the Hon. JAMES B. HEAD.

Action by Bell Sanders, as administratrix, against the Kansas City, Memphis & Birmingham Railroad Company, for the wrongful death of R. E. Sanders.

Before proceeding to the trial of the cause the defendant made a motion for a change of venue, making affidavit that because of the facts set forth in the affidavit the defendant could not have a fair and impartial trial in the county of Walker, where the trial was then pending in the Circuit Court. There was a great deal of evidence introduced in support of this motion. On hearing the evidence and the arguments thereon, the court overruled this motion. To this ruling the defendant duly excepted. The material facts gathered from the bill of exceptions may be summarized as follows: Appellee's intestate was on a train of the appellant as a passenger. That, through a mistake of defendant's engineer, he left the passenger station at Birmingham, leaving the conductor and a sleeper. The engineer did not discover the mistake until he reached Ensley, five or six miles from Birmingham. Upon discovering his mistake at Ensley, the engineer, after waiting about a minute or two, started to back his train to Birmingham. There was no light on the rear coach, and he was backing at the rate of fifteen to thirty miles an hour. That when they had gone back about two miles and a half in the direction of Birmingham the train on which the plaintiff's intestate was a passenger collided with the extra freight, which was ordered to move out in rear of the passenger train, and by this collision the plaintiff's intestate was so injured that he died from the effects of his injuries. The testimony showed that the passenger train of the defendant, going west, usually waited at night an hour for the Georgia Pacific passenger train, when it was behind time, in order to carry a sleeper which the Georgia Pacific train brought in. That on the night of the accident the Georgia Pacific was one hour behind time, and that as the Georgia Pacific train was coming into the city, when about two or three blocks from the passenger depot, J. J. Mullins, night station master of the depot, signaled the engineer of the defendant's train, Russell, to pull down out of the shed. The signal was given by Mullins in order that the Georgia Pacific, coming in, could come in on the same track; but the engineer of the defendant mistook the signal for that of its conductor, and pulled out, leaving the conductor and the sleeper behind. Mullins and the conductor of the defendant were dressed

alike, and the signal given by Mullins was the same kind of a signal that the conductor would have given, to pull out. Upon the examination of Slade, who testified that he was foreman of the mechanical department of the defendant's road, and that he had charge of the locomotives, engineers, and firemen, and had authority to employ, suspend, and discharge engineers, the plaintiff asked him the following question: "State whether or not Russell was discharged from the service of the Kansas City, Memphis & Birmingham Road for drinking, or was ever suspended for drinking." Defendant objected to this question because it was illegal, irrelevant, and immaterial. Upon the counsel stating that they expected to connect the evidence with evidence tending to show that Russell was drinking at the time of the accident, the court overruled the objection, and allowed the evidence, and the defendant duly excepted. The witness said, "Yes, sir; he was." The witness further testified that after Russell was suspended by him he reported it to Briggs, the master mechanic of the defendant, who was his superior, and that Briggs reinstated Russell within twenty-four or thirty-six hours. After this witness had testified that he had known Russell three years prior to the time he was suspended, and knew his habits as to drinking, the plaintiff asked him the following question: "What were his habits?" The defendant objected to this question because it was illegal, irrelevant, and immaterial, and duly excepted to the court's overruling his objection. The witness answered: "He was a regular drinker. I cannot say he drank to excess, but he was a man who could stand a great deal of whisky." Upon Joe Spanier being called as a witness for the plaintiff he testified that he remembered reading about the collision at Ensley the next day. The plaintiff then asked the witness the following question: "Did you see Charles Russell the night of the wreck, or the evening of the wreck?" Witness answered he did, and then testified to seeing Russell take several drinks during the evening, and that he was somewhat under the influence of drink. The defendant moved the court to exclude the testimony of Joe Spanier in regard to the condition and whereabouts of Charles Russell on the night of the 21st of October, 1890, on the ground that the testimony of Spanier did not identify the said Charles Russell, about whom he testified, with the Charles E. Russell who was the engineer of the defendant's passenger train on the night of the collision. The court overruled the motion, and the defendant duly excepted.

The defendant requested the court to give the following

charges, and separately excepted to the courts refusal to give each of them, as asked : (1) "The only negligence for which the defendant is liable in this action is that of its engineer, Charles Russell, even if the jury believe that there was negligence on the part of any other employee of the defendant." (2) "If you believe the evidence in this case, you must find for the defendant." (3) "In assessing the damages in this case, the jury cannot look to the fact that the defendant is a corporation." (4) "The jury, in considering the question of punitive damages, are authorized to take into consideration the fact, if they find such to be the fact, that the defendant was not guilty of any corporate negligence,—that is, negligence on the part of the defendant itself as a corporation, or of its governing officers." (5) "There is no evidence in this case of any corporate negligence,—that is, negligence of the defendant itself, as a corporation, or of its governing officers." (6) "It was not negligence on the part of the defendant to provide the conductor on its passenger train with signal lamps and uniforms of the same or similar color with those furnished to the station master, J. H. Mullins." (7) "The only negligence of the defendant's engineer, Charles Russell, for which the defendant is chargeable in this action, is in his backing up the passenger train from Ensley without lights, and without having sent a flagman fifteen telegraph poles in front of the advancing passenger train, and in running at a negligent rate of speed while so backing, and at the time of the collision, if the jury believe that he did so run." (8) "There is no evidence of any negligence upon the part of the witness, J. H. Mullins, in regard to the questions involved in this suit." (9) "There is no evidence that the defendant's master mechanic, R. R. Briggs, had any notice before the time of the accident that the defendant's engineer, Charles Russell, was not a sober and competent engineer." (10) "The jury are only authorized to award nominal damages in this case." (11) "It was not negligence on the part of the defendant, of which the plaintiff can complain, for the defendant to provide the conductor on its passenger train with signal lamps and uniforms of the same or of similar color with those furnished to the station master, J. H. Mullins." (12) "The jury are not authorized to award the plaintiff punitive damages because of the negligence of defendant's engineer, Charles Russell, in leaving the Union Depot in Birmingham without his conductor, and without his sleeper." (13) "The defendant is not liable for damages in this case because of the act of its engineer, Russell, in leaving with

his train the Union Depot in Birmingham without his conductor, and without his sleeper." (14) "The jury are not authorized to award punitive damages in this case unless they believe that the defendant was guilty of willful, wanton, or reckless negligence." (15) "The fact that the defendant used due care in the selection and retention of the engineer, Charles Russell, if the jury believe such to be the fact, and the fact that it provided and promulgated rules suitable for the reasonable safety of its employees and passengers, if the jury believe such to be the fact, may be considered by the jury in mitigation of that amount of damages awarded by way of punishment." (16) "Unless you shall believe from the evidence the witness Joe Spanier has told you the truth, you ought to find that the engineer, Russell, was neither drunk nor drinking on the night of, and at the time of the collision." (17) "The jury, in considering the amount of punishment to be awarded in this case, are authorized to take into consideration the fact, if they believe such to be the fact, that there are pending three other cases in which damages by way of punishment against the defendant for the same negligence may be awarded." (18) "That if the evidence in this case shows to the satisfaction of the jury that defendant corporation was not guilty of any corporate negligence in this case, they may look, and should look, to such fact, in determining the amount of damages they assess in the way of punishment to the defendant in this case." (19) "That if the jury believe that Slade removed Russell on account of Russell's reporting Slade to Briggs for drunkenness, and not for his having taken a drink with Walter Moore, then I charge you that the fact of his suspending Russell is not a circumstance to be considered by the jury against the defendant in this cause." (20) "That if the jury believe from the evidence that Slade suspended Russell without reasonable cause therefor, and on account of Russell having reported Slade to Briggs for drunkenness, then I charge you that there has been proven no corporate negligence in this cause." (21) "The jury are not authorized to award the plaintiff punitive damages because of the engineer, Russell, mistaking the signal of the station master for that of his conductor, even if the jury believe that such mistake was caused by the drunkenness of Russell." (22) "That if the jury believe from the evidence that the plaintiff's intestate's death was caused alone from the negligence of defendant's engineer, Charles E. Russell, and that the said Russell had borne the reputation of a good, safe, prudent, and competent engineer down to the time of the accident

[Kansas City, M. & B. R. R. Co. v. Sanders.]

causing said death, then I charge you that you may look, and should look, to this latter fact in determining the amount of damages you should assess in the way of punishment to the defendant in this cause." (23) "The jury are authorized to consider, in mitigation of the amount of damages they may award against the defendant in this case by way of punishment, the fact that the defendant may be subsequently again punished for the same act of negligence in the other suits pending in the other courts for the death of other persons killed in the same collision, if the jury believe that the defendant may be so punished." (24) "Even if the jury believe that the defendant was negligent in not having a night telegraph station at Ensley at the time of the accident to plaintiff's decedent, they are not authorized to award plaintiff any damages because of such failure." (25) "I charge you that the complaint in this cause presents no substantial cause of action, and you must find for the defendant." (26) "There is no evidence in this case that the defendant's foreman, Charles Slade, knew, while in the service of defendant, that the defendant's engineer, Charles E. Russell, was not a competent and sober engineer." (27) "It was not negligence on the part of the defendant, to which the jury can look in their assessment of damages in this case, that the defendant provided its conductor on the passenger train on which plaintiff's decedent was riding at the time of his injury with signal lamp and uniform of the same or similar color to that of the station master, J. H. Mullins." (28) "It is not negligence, to which the jury can look in their assessment of damages in this case, that the defendant's engineer, Charles Russell, left the Union Depot at Birmingham without his conductor, and without his sleeper." (29) "It was not negligence, to which the jury can look in their assessment of damages in this case, that the defendant's engineer, Charles Russell, mistook the signal of the witness J. H. Mullins for that of his conductor."

WALLACE PRATT, and HEWITT, WALKER & PORTER, for appellant, filed a lengthy printed argument, citing many authorities, analysing the numerous charges given and refused by the court, and insisting that the verdict rendered against the defendant should be set aside as excessive.

J. J. ALTMAN, for appellee, filed a lengthy argument for appellee.

[Kansas City, M. & B. R. R. Co. v. Sanders.]

McCLELLAN, J.—Under statutes of force prior to the Act of February 17, 1885—Code, § 4485—it was many times decided that the action of a *nisi prius* court denying an application for a change of *venue* was not revisable on appeal to this court. It is true that those adjudications were made in criminal cases, but there is no ground for a distinction in this regard between civil and criminal causes; the same considerations which led to the conclusion that an appeal would not lie from a refusal to grant a change of *venue* in a criminal case fully obtain in respect of, and would necessarily have led to the same conclusion in civil cases had the question arisen on appeals therein. The act referred to has no bearing upon civil cases whatever; its sole reference is to cases involving the trial of an indictable offense, and with respect to these alone it provides that the refusal of an application for a change of *venue* may be reviewed and revised on appeal. This leaves the rule which obtained before the statute as to all cases, still applicable to all civil cases; and we will not review the action of the trial court in this case in denial of the defendant's application for a change of *venue.*

2. The complaint contains seven counts. They each aver that the death of plaintiff's intestate was caused by a collision of a passenger train, on which deceased had taken passage from Birmingham to Jasper, with a freight train It is averred in each that the passenger train started on its journey without its conductor and without a sleeping car which it should have carried, that upon reaching Ensley City, seven miles from Birmingham, the engineer undertook to return to the latter city for the conductor and sleeping car, running his train backwards, and that in doing so the passenger train collided with the engine of a freight train going in the opposite direction. The *first* count ascribes the casualty to the negligence of the engineer of the passenger train in backing his train toward Birmingham; the *second*, to his negligence in so backing his train without a conductor and without a light on its front as it was being done at the time; the *third*, to the negligence of the engineer of the freight train; the *fourth*, to the negligence of the conductor belonging to the passenger train in giving notice to the train dispatcher that his train was out of the way of other trains, in consequence of which the freight train was sent out; the *fifth*, to the negligence of the train dispatcher in sending out freight train; the *sixth*, to the negligence of the defendant and its employees in so running the passenger train that it collided with the engine of the freight train; and *seventh*, to

the negligence of the defendant in so conducting itself in and about carrying plaintiff's intestate and in and about the management and control of the train upon which he was being carried, and in and about the management of said freight train that the two trains collided, &c., &c.

On a former trial, the defendant withdrew all its pleas and suffered a judgment *nil dicit*, contesting only the amount of damages to be assessed by the jury under a writ of inquiry. The verdict then returned—for $44,500—was set aside by the court as excessive ; but the judgment *nil dicit* with leave to execute a writ of inquiry was not and has never been disturbed.  The last trial, that upon which arose the questions presented by this appeal, was had solely upon the writ of inquiry, the only matter in issue being the measure of damages to be assessed by the jury  In discharging that duty, the jury were authorized to look at any negligence on the part of the defendant or its employees which is counted on in the complaint and which conduced to the injury complained of, or added to the culpability of the alleged acts and omissions which immediately produced the disastrous result ; the real and only inquiry being the *degree* of culpability of the defendant or his employees in respect of the casualty as averred, and the consequent mead of punishment that should be inflicted for the wrong done.

3. It is to be observed that the averments of the complaint, and especially of the sixth and seventh counts, are sufficiently broad to cover, and they do cover all negligent acts and omissions of the defendant or of any of its employees in respect of the movements, the running, the management and control of both the trains which were in collision from and including the starting thereof from Birmingham to the time of and including the collision between them.  If the defendant, or its employees, was negligent in respect of the signal given the engineer of the passenger train, Russell, in response to which he proceeded on the regular run of his train, when the signal man intended only that he should move out of the way of an incoming train, or if Russell was negligent in wrongly interpreting the signal, or if the company was negligent in failing to have a night operator at Ensley, so that Russell could have gotten orders to run his train accordingly in safety, &c., &c., all this was negligence in the management, control and running of the passenger train on the occasion in question, and is covered by the averments of the complaint.  Whether all the negligence thus charged in or covered by the complaint, conceding all of it to find support in some aspects of the evidence, was negligence

which proximately contributed to the injury, or was so connected therewith as to be proper for the consideration of the jury in the assessment of damages, is another question. In approaching its consideration, it is to be borne in mind that it was defendant's duty to carry deceased safely from Birmingham to Jasper, that this duty involved the highest degree of care, skill and diligence on the part of defendant's employees, and that the company was liable for the injurious consequences of the slightest negligence on their part. It can not be doubted that had the passenger train through the negligence of the company or its servants been prematurely sent out of Birmingham, and a collision had occurred anywhere along the line without any other negligence than that of the untimely starting of the train, *prima facie*, injuries resulting therefrom to passengers would be ascribable to that negligence, and the corporation would be responsible. It is equally clear that if the negligent premature departure of the train from Birmingham furnished the occasion, not to say necessity, for its return after reaching Ensley City, the defendant would have been liable for injuries suffered by passengers in consequence of the train's returning, or attempting to return even though the effort to return was made with the greatest circumspection, care and diligence. It is virtually conceded in this case, that it was necessary for Russell to carry his train back to Birmingham after he arrived at Ensley City, and found that the conductor and sleeping car had been left at the former place ; rules of the company, indeed, were adduced in evidence without objection as showing that it was his duty to return, and pointing out the manner in which he should do so. If he had exercised due care in so doing, and the defendant or others of its employees had not been guilty of any negligence except in respect of the original departure of the train from Birmingham, and, notwithstanding all this. plaintiff's intestate had come to his death from some unforeseen and unavoidable accident incident to the return of the train, it can not be questioned that defendant would be liable solely for the original negligence in starting the train on its journey, and the damages would be assessed with reference to the culpability of that negligence. But the engineer, Russell, was lacking in requisite care in the manner of backing his train toward Birmingham, and but for this the casualty would not have happened at all, so that the original negligence would have been innocuous but for this secondary want of care on the part of the engineer. Should these facts take from the jury the right to consider the first

negligence in determining the degree of defendant's fault in the premises? Should the jury, in their effort to find the degree of defendant's culpability for the purpose of meeting out commensurate *punishment* upon the corporation be confined to a consideration of the negligence which supervened and immediately produced the damnifying result to the exclusion of the prior negligence which produced the occasion for the immediate negligence, and but for which there would have been no necessity for the passenger train's being in a position where the collision was possible? We think not. While the original negligence did not directly cause the injury, it was productive of the immediate cause; and, *at least in this character of case*, where the question is entirely as to the degree of culpability of the defendant, the amount, so to say, of its fault, we think the jury should be allowed to look at the chain of causation, to successive careless acts or omissions, the earlier conducing to, and furnishing occasion for the latter in reaching their conclusion as to the sum of the defendant's culpability in respect of acts which should not have been committed, and wrongful omissions to act which led up to the wrong actually done, and for which they are to inflict a just measure of punishment, the deterrent and preventive purpose of which would cover as well the original and conducive negligence as the final and immediate failure to observe due care. And the foregoing observations and our conclusions thereon, are equally applicable to the failure of the defendant to have a night operator at its Ensley City office. If defendant's duty was to have an operator there for the uses of its passenger trains, it was guilty of negligence, of course, in failing so to do. The evidence tends to show that Russell would have telegraphed to Birmingham for orders had there been an operator at Ensley City, and thus have avoided the necessity of going back there, or been so advised of the situation as that he might have gone back without meeting the freight train. Assuming the absence of the operator to have been negligence on the part of the defendant, it was but another link in the chain of causation producing the final result—another item of wrong on the part of the defendant conducing to the death of plaintiff's intestate, and adding to the culpability by reference to which the jury were to inflict punishment for the death of the deceased.

4. Whether the failure to have a night operator at this place *was* negligence on the part of the defendant is a question not presented by this record and which we do not decide. The only ruling made in this connection at all con-

sisted of the court's refusing to give the following charge requested by the defendant: "Even if the jury believe that the defendant was negligent in not having a night telegraph station at Ensley at the time of the accident, they are not authorized to award plaintiff any damages because of such failure." It is obvious that this charge proceeded solely on the theory, which we have held untenable, that, conceding the omission in question to have been negligence, it was too remote for consideration in assessment of damages.

5. The question whether there was negligence on the part of the defendant or its employees on any aspect of the evidence in the movement of the passenger train out of Birmingham is presented by the record. The evidence in this connection tended to show—indeed it did show without conflict—that the train started on its journey at the signal of a watchman which the watchman intended to mean that the train should pull up out of the station so as to allow another train—that for which this train was waiting and from which it was to get a sleeping car—to come in on the same track, and then to stop. This the evidence tends to show was the proper signal to be made *by the watchman* for that movement. It was also the proper signal *for the conductor* to make for the purpose of starting this train on its course to Memphis, Tennessee. The conductor and watchman were supplied with the same uniform, the same kind of lanterns for signalling purposes, and the signal made by the watchman for the train to move out of the way was made in the same way that the conductor would have signalled for the train to proceed on its way to Memphis. The engineer, it was open to inference, in consequence of the similarity of the uniforms, the lanterns and the manner of making the signal mistook the watchman's signal for the conductor's and in response to it as such went out on and along the line, not discovering his mistake until he reached Ensley City. This evidence, in our opinion, seems to show negligence. The facts of the case demonstrate that much depends upon the correct interpretation of signals given by watchmen and conductors respectively to engineers in the station at Birmingham in respect of moving their trains, and it would certainly be the part of even ordinary care and prudence, much more of that highest diligence, skill and care which were due in this case, for the railroad company to provide some means by which the watchman and his signal could be distinguished from the conductor and his signal when there is such an important difference between the orders intended to be conveyed by them. The charges

requested on this part of the case are either directly opposed to this view, or involved such a tendency to mislead the jury to the contrary conclusion as to render their refusal proper.

6. As has been stated, the 7th count avers among other facts that the defendant negligently "conducted itself in and about the carrying of plaintiff's intestate." This averment is sufficiently broad to cover the omission of any duty which the carrier owed to the passenger whether in respect of the care necessary in the act of transportation—the management and control of the train or of the use of suitable and safe means of carriage—vehicles, appliance, roadway and the like—or in respect of the employment of competent, skillful and careful servants in the transportation. Therefore it was competent under this allegation to prove that the defendant was negligent in the employment of the engineer, Russell, or in his retention in its service. There was evidence which tended to show such negligence. Of this character was the testimony of the witness Slade and Briggs that the former had suspended Russell a month or two before the collision for drinking and reported the fact of suspension and the ground of it to the latter who had immediately reinstated the engineer and continued him in the service of the company, and the further testimony of Slade that Russell was a man of intemperate habits. It was the duty of Briggs to employ engineers and discharge them when found to be incompetent or addicted to inebriation; and it was, of course, a part of this duty to be on the alert, to be careful and diligent, to keep himself advised of habits and courses of life which tended to unfit an otherwise competent man for the exacting service and grave responsibilities of engineers. He was put on notice of the charge that Russell was a drinking man. It was open to the jury to find that the engineer's habits were intemperate, and that he was drunk at the time of the collision. Notice of the charge imposed the duty of inquiry on Briggs. This inquiry, it is to be presumed, would have disclosed Russell's unfitness, if indeed he was unfit, for the post of engineer. And there was room on all this testimony for an inference on the part of the jury, either that Briggs had been negligent in failing to make proper investigation, or that having made it and ascertained the facts to be in line with these tendencies of the evidence, he was negligent in allowing Russell to continue in the service of the company. The exceptions to this evidence are untenable; and charge 9 requested for defendant to the effect that there was no evi-

dence that Briggs had any notice before the accident that Russell was not a sober and a competent man was properly refused.

Subsequent to this action of the court, however, the defendant requested another charge which was in substance the same as charge 9. This the trial judge also declined to give, "and wrote thereon the word, 'Refused,' and signed his name thereto; and the defendant excepted to the refusal of the court to give said charge to the jury; the counsel for plaintiff thereupon stated in open court that they would consent that said charge be given to the jury, and the court thereupon erased from said charge the word 'Refused,' and wrote in lieu thereof the word 'Given,' and read said charge to the jury." The defendant thereupon moved the court to exclude from the jury the argument of plaintiff's counsel with reference to the negligence of Briggs in retaining Russell in the service of the company after he had notice that the latter was an incompetent and not a sober engineer. The court overruled this motion and the defendant excepted. The refusal of this charge in the first instance was, as we have seen, proper. The consent of the plaintiff that it might be given whereby defendant lost the exception to its refusal did not on this account prejudice the defendant since the exception was without merit. There was evidence tending to show that Briggs had notice of Russell's incompetency and that he was not a sober man. This evidence the jury abstractly had the right to look to in their assessment of damages. The court by plaintiff's consent in effect instructed them not to consider this evidence—that there was no such evidence. But acting without consent, on its own responsibilty, so to speak, the court in refusing to exclude the argument of counsel based on this evidence, in effect said to the jury that they might consider that argument, and of necessary consequence the evidence upon which it proceeded. These attitudes taken by the court were inconsistent with each other. The jury could not comply with both these diverse directions of the court. If, however, they acted upon the charge and eliminated the evidence in question from their deliberations upon the case, the defendant, of course, could not complain; the charge was requested by it and obedience to the instruction was beneficial to it. If on the other hand the jury took into consideration this evidence and the argument of counsel upon it, as the refusal of the court to exclude that argument tended to allow them to do, it is clear that the defendant sustained no legal injury from their so doing since the evidence in point of fact was in the case,

20–98.

the argument was a legitimate one upon it, and, abstractly considered, the jury had a right to look to it in the light of its proper exposition in argument in their assessment of damages. The refusal of the court to exclude the argument was not even technically erroneous except by reference to and because of the erroneous instruction in defendant's favor as to the non existence of the evidence upon which the argument was based. And to hold that such refusal involved reversible error would be to decide the case for the defendant because the court had at its request given an erroneous charge in its favor—to reverse the judgment against the defendant really for no other reason than that the trial court had ruled more favorably to it than the law warranted, and to deprive the plaintiff of her judgment not for any error prejudicial to defendant, not because the jury possibly considered matters which were not properly before them, but because of an error prejudicial to her which tended to exclude from the jury evidence which it was proper for them to consider in the determination of the issue submitted to them. Another view. To put the case in the strongest light for the defendant, here are two instructions on the same point, inconsistent with—in fact, diametrically opposed to—each other. The one is favorable to the defendant and erroneous. The other is favorable to the plaintiff and free from error. The only error involved is that favorable to the defendant and of course it will not be heard to complain.

Charge 8, requested by defendant, to the effect that there was no negligence on the part of the watchman, Mullins, shown by the evidence, was properly refused. There was room for inference to be drawn by the jury that he was not sufficiently careful in giving the signal to the engineer from the fact that the signal given did not convey the latter the meaning it was intended to convey.

While it is very true that in the assessment of damages in this case no influence should have been accorded by the jury to the fact that the defendant is a corporation, it was not the court's duty to have so instructed them, though had such instruction been given no error would have been committed. The court can not assume that the jury will make an insidious and unauthorized discrimination against either party because of corporate character or of any other personal attribute, status or characteristic, and is under no obligation to go into the field of speculation respecting extraneous and illegitimate considerations that may by possibility operate on the minds of the jury, and guard them against such considerations. In-

Vol. 98.

structions of this kind are in the nature of arguments and may well be refused.

Charges 4, 15, 18, 20 and 22 requested by defendants are in substance that different measures of damages should be assessed in this class of actions accordingly as the evidence shows negligence on the part of the corporation itself or merely on the part of its employee's, the contention being that less punishment should be visited on the corporation for the fault of its servants merely than would be proper where what is called corporate negligence is shown. It might be a sufficient reply to this proposition to say that the statute makes no such distinction between a defendant corporation, on the one hand, and the defendant's servants or agents ; the fault of either entails the same liability. Code, § 2589. But perhaps a more satisfactory reply may be rested on the considerations that in this class of actions, where the wrong complained of produces the death of one who is not an employee of the defendant corporation, there can be no such thing as negligence of a servant which is other, for all practical purposes, than the negligence of the master and, *e converso*, no such thing as corporate negligence which is not essentially the negligence of its agents or servants. The distinction between corporate negligence and negligence of servants of a corporation belongs to another branch of the law. It is a part of the doctrine of the common law that employees assume the risks of the service they enter upon and among the rest the dangers incident to the negligence of fellow servants. This doctrine involved a determination as to who were fellow servants and who were not, in passing on the question of the master's liability for the negligence of one agent resulting in injury to another ; and where the negligence complained of was committed by an agent or servant charged with the performance of a duty which rested on the master as such it was said that this was the master's negligence though in fact committed by a servant, not that of a fellow servant, and hence that notwithstanding the exemption of the master generally from responsibility for the negligence of his servants resulting in injury to another servant, he would in such case be liable. And so where the master is a corporation, the negligence of a servant in discharging a duty which rests on the master is called corporate negligence solely in contradistinction to fellow servant negligence ; that is, it is negligence for which the corporation is liable, although in all cases that of an agent of the corporation, and by this fact distinguishable from fellow servant negli-

gence for which the corporation is not liable at common law. But these distinctions and the phrases in which they are expressed, as "corporate duty," "corporate negligence," and the like, have never been recognized and have never obtained in the law applicable to the rights and remedies of strangers to the corporation or of passengers being transported by a common carrier corporation for injuries suffered through the negligence of corporation servants. In these cases there is no question as to fellow servants. The corporation is as much liable for the negligence of one servant as any other. Each servant is discharging the duties of the corporation in the same sense as every other one. The negligence of the company's highest agent is no more that of the corporation with respect to strangers and passengers than that of the manual laborer in its service. And since no corporation can act except through agents, and no negligence can be imputed to the corporation except in respect of acts or omissions of agents, there can in the nature of things be no corporate negligence which is not essentially the negligence of its agents. The giving of the instructions under consideration would have been therefore to tell the jury that they should punish the corporation less severely for the negligence of one agent than for that of another, that, for instance, the negligence of the corporation's agent whose duty it was to supply conductors and watchmen with uniforms and lanterns, (which would be a corporate duty under the law governing *inter se* the relations, &c., of the company and its employees) justified the infliction of greater punishment than the negligence of the engineer in causing the terrible collision shown by the evidence, or that the mere inadvertence of a master mechanic in failing to discharge an engineer was more culpable than omissions of manifest duty on the part of an engineer producing the death of several people. The argument in support of these charges seems to proceed on the idea that in one case the negligence would be personally that of the company and that therefore greater punishment should be inflicted, and in the other it is the fault of an employee merely and therefore less punishment should be imposed. The fact is that in both cases—in all cases indeed—the punishment is vicarious, the fault is the servant's whether he be of high or low degree, and for his fault his employer, the corporation, is vicariously punished.

Charge 6, to the effect that there was no evidence in the case of corporate negligence, "that is of the defendant itself, as a corporation, or of its governing officers" was properly

refused on considerations last above adverted to as well as others not necessary to be gone into. It could make no possible difference in the assessment of damages whether there was evidence of such negligence or not.

There was other negligence of the engineer, Russell, counted on in the complaint and finding lodgment in the evidence than that hypothesized in charge 7, and for this reason alone that charge was properly refused.

The charge numbered 16, to the effect that unless the jury believe from the evidence that the witness Spainer told them the truth, they ought to find that Russell was neither drunk or drinking at the time of the collision was misleading in that this witness testified to other facts than with reference to Russell's drinking and the jury had the right to believe him in respect of the drinking although they did not believe he had told the truth throughout his testimony. The tendency of the charge was to deny them this right. The charge was also argumentative.

Charges 17 and 23, refused to the defendant were intended to have the jury consider the fact of the pendency of other suits against the defendant for deaths of other persons than plaintiff's intestate resulting from the collision in which the latter was killed in reduction of the damages they might otherwise assess in this case. We may put the case on the basis contended for by appellant's counsel, which indeed must be conceded to result from the fixed construction of Section 2,589 of the Code—the "homicide act,"—and consider this purely an action to punish the defendant for negligently causing the death of plaintiff's intestate, without subscribing to the proposition of these charges. So viewing the nature of the case, that proposition is that where a wrongful act produces the death of two or more persons and the wrong doer is proceeded against separately for each homicide, he may on a trial for the homicide of one man introduce the fact that he at the same time and by the same act killed another or other men and is being prosecuted and will probably be convicted and punished therefor to lessen the punishment to be inflicted in the case being tried. This can not be and is not the law. The charges were properly refused.

Several of defendant's requests for instructions proceed on the theory that a recovery under Section 2,589 of the Code, is limited to actual damages sustained by the surviving relatives—distributees—of the deceased unless the jury find that the casualty was the result of wantonness, willfulness or the like on the part of those against whom

[Draper v. Walker.]

negligence is charged. This is not the law, as has been recently reaffirmed by this Court.—*Richmond & Danville Railroad Co. v. Freeman,* 97 Ala. 289.

The verdict of the jury was not excessive. Without undertaking to formulate any rule on the subject, we feel safe in the conclusion that the damages assessed in this case were not disproportionate to defendant's culpability in causing as shown by the evidence the death of plaintiff's intestate.

We find no error in the record and the judgment of the Circuit Court is affirmed.

Affirmed.