C. W. LATIMER, Jr., Appellant,

v.

SEARS ROEBUCK AND COMPANY,
Appellee.

No. 18277.

United States Court of Appeals
Fifth Circuit.

Nov. 29, 1960.

J. A. McClain, Jr., of Mabry, Reaves, Carlton, Fields & Ward, Tampa, Fla., for appellant.

Thomas C. MacDonald, Jr., Vernon W. Evans, Jr., Tampa, Fla., Shackleford, Farrior, Stallings, Glos & Evans, Tampa, Fla., of counsel, for appellee.

Before TUTTLE, CAMERON and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

This appeal presents a problem in statutory construction. The question for decision is whether Section 768.03, Florida Statutes, F.S.A., permits a parent to bring an action ex contractu for the death of his minor child. The decision turns on whether a 1953 Amendment to Section 768.01, the "Wrongful Death Act", applies also to Section 768.03, the "Death of Minors Act", thereby authorizing the plaintiff-appellant here to sue for damages for the death of his minor child allegedly caused by the defendant's breach of implied warranty.[1] The district judge

1. "768.01 Right of action for death.—

"(1) Whenever the death of any person in this state shall be caused by the wrongful act, negligence, carelessness or default of any individual or individuals, or by the wrongful act, negligence, carelessness or default of any corporation, or by the wrongful act, negligence, carelessness, or default, of any agent of any corporation, acting in his capacity of agent of such corporation (or by the wrongful act, negligence, carelessness or default of any ship, vessel or boat or persons employed thereon), and the act, negligence, carelessness or default, is such as would, if the death had not ensued, have entitled the party injured thereby to maintain an action (or to proceed in rem against the said ship, vessel or boat, or in personam against the owners thereof, or those having control of her) and to recover damages in respect thereof, then and in every such case the person or persons who, or the corporation (or the ship, vessel or boat), which would have been liable in damages if death had not ensued shall be liable to an action for damages (or if a ship, vessel or boat, to a libel in rem, and her owners or those responsible for her wrongful act, negligence, carelessness or default, to a libel in personam), notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to a felony.

"(2) The right of action as set forth in subsection (1) above shall extend to and include actions ex contractu and ex delicto.

"768.02 Parties; damages; proviso.—

"Every such action shall be brought by and in the name of the widow or husband, as the case may be, and where there is neither widow nor husband surviving the deceased, then the minor child or children may maintain an action; and where there is neither widow nor husband, nor minor child or children, then the action may be maintained by any person or persons dependent on such person killed for a support; and where there is neither of the above classes of persons to sue, then the action may be maintained by the executor or administrator, as the case may be, of the person killed. In case of the death of any person solely entitled, or of all the persons jointly entitled to sue, before action brought or before the recovery of a final judgment in action brought by him or them, the right of action or the action as the case may be, shall survive to the person or persons next entitled to sue under this section, and in case of the death of one or more persons jointly entitled to sue before action brought or before the recovery of a final judgment in an action brought by them, the right of action or the action, as the case may be, shall survive to the survivor of such persons so jointly entitled to sue; and in every such action the jury shall give such damages as the party or parties entitled to sue may have sustained by reason of the death of the party killed; provided, that any person or persons to whom a right of action may survive under the provisions of this act shall recover such damages as by law such person or persons are entitled to recover in their own right to recover, irrespective of the damages recoverable by the person or persons whom he or they may succeed.

"768.03 Parties in actions for death of minor child; damages.—

"Whenever the death of any minor child shall be caused by the wrongful act, negligence, carelessness or default of any individual, or by the wrongful act, negligence, carelessness or default of any private association or persons, or by the wrongful act, negligence, carelessness or default of any officer, agent or employee of any private association of persons, acting in his capacity as such officer, agent or employee, or by the wrongful act, negligence, carelessness or default of any corporation, or by the wrongful act, negligence, carelessness or default of any

held that it did not and directed a verdict for the defendant-appellee. We affirm.

In February 1958 Charleen Latimer, a little girl six years old, was warming herself near an electric heater in her home in Tampa, Florida. She was wearing a chenille housecoat her mother had recently bought for her at Sears Roebuck. Suddenly the housecoat burst into flames and in seconds was consumed in a flash of fire. Charleen suffered painful burns affecting her whole body. After two agonizing weeks in a hospital, Charleen died.

C. W. Latimer, as the father of his deceased minor child, sued Sears Roebuck for $75,000, alleging that the housecoat had been treated with a combustible or inflammable material making it inherently dangerous when worn by anyone near a heater. The complaint is in two counts. The first is based on a breach of implied warranty of reasonable fitness of the housecoat for the use for which it was intended. The second is based on negligence. The appellant alleges that Sears offered the housecoat as its own product and thus has the same degree of liability as if it had been the manufacturer. The district court directed a verdict for the defendant on the second count without assigning any reason but apparently on the ground that the evidence failed to show that the defendant was negligent. The appellant does not challenge the district court's ruling on count two.

We examine first the Florida statutory scheme controlling actions for wrongful death. There are three statutes: (1) the "Wrongful Death Act" (Sections 768.01 and 768.02), (2) the "Survival Act" (Section 45.11), and (3) the "Death of Minors Act" (Section 768.03). Alpert, Florida Death Acts, 10 U.Fla.L.Rev. 153 (1957). (1) "Sections 768.01 and 768.02 consti-

tute a wrongful death statute",[2] creating a right of recovery that did not exist at the common law. The Wrongful Death Act, originally adopted in 1883, establishes a right of action "whenever the death of *any person* * * * shall be caused by the wrongful act, negligence, carelessness, or default of any individual' * * * and the act, negligence, carelessness or default, is such as would, if the death had not ensued, have entitled the party injured thereby to maintain an action". Damages are limited to such damages "as the party or parties entitled to sue may have sustained by reason of the death of the party killed". (2) Section 45.11, the Survival Act, originally enacted in 1828, allows the personal representative of the decedent to recover such damages as the decedent himself would have recovered except for his death. Section 45.11 is not involved in this case. (3) Section 768.03, the Death of Minors Act, originally enacted in 1899, under which Latimer sues, creates a cause of action in favor of the father, or if the father is dead, the mother, "whenever the death of *any minor child* shall be caused by the wrongful act, negligence, carelessness or default of any person." Under this law, the parent suing may recover for the loss of services of the minor child and the mental pain and suffering of the parent (or both parents).

The Florida courts recognize that the legislature created three separate and distinct kinds of actions for the death of a minor. In Miami Dairy Farms v. Tinsley, 1934, 115 Fla. 650, 155 So. 850, 851; 115 Fla. 164, 155 So. 852, a father sued under Section 768.03 and a personal representative sued under Sections 768.01 and 768.02. The Florida Supreme Court commented: "These recoveries are in dif-

officer or agent, or employee of any corporation acting in his capacity as such officer, agent or employee, the father of such minor child, or if the father be not living, the mother may maintain an action against such individual, private association or persons, or corporation, and may recover, not only for the loss of services of such minor child, but in addi-

tion thereto, such sum for the mental pain and suffering of the parent (or both parents) if they survive, as the jury may assess."

2. English v. United States, 5 Cir., 1953, 204 F.2d 808, 810. See also Kasanof v. Embry-Riddle Co., 1946, 157 Fla. 677, 26 So.2d 889, 893.

ferent rights for distinct injuries, and the damages are determined upon evidence of a different nature; therefore two separate actions are provided for." The two actions may not be joined in the same suit. Pensacola Electric Co. v. Soderlind, 1910, 60 Fla. 164, 53 So. 722. See also Coon v. Atlantic Coast Line Railroad Co., 1936, 125 Fla. 490, 171 So. 207. In Klepper v. Breslin, Fla.1955, 83 So.2d 587, involving an action under Section 768.03, the court denied recovery because the negligence of a mother may be imputed to the plaintiff-father under Section 768.03; under Section 768.01, however, it would appear that the action of a dependent would not be barred by the mother's negligence. We note that the appellant here, in addition to the instant case, has brought separate suits against the appellee under Section 45.11 and under Sections 768.01 and 768.02.

Sections 768.01 and 768.02 together constitute the Florida counterpart of Lord Campbell's Act (9 & 10 Vict. c. 93, 1846) and are similar to the Wrongful Death laws adopted by most of the states.[3] It is clear that under Sections 768.01 and 768.02 a parent cannot recover for the wrongful death of a minor unless the parent was dependent on the minor for support or is an heir or devisee in a suit for wrongful death by the administrator

of the child's estate. The Death of Minors Act, Section 768.03, however, is something else again.[4] Its purpose "is to afford to parents as such, and in their individual right, relief not allowed at common law or by the previous statute [Sections 768.01 and 768.02]." Seaboard Air Line Railway Co. v. Moseley, 1910, 60 Fla. 186, 53 So. 718, 719. The Florida Supreme Court has said that the law is "peculiar to Florida".

> "So far as we have been able to determine this statute is peculiar to Florida, and we find no exact counter-part in any other state * * *. The peculiarity of the Florida act is that it creates a right to a cause of action which, first may be exercised by the father of a minor, and if the father be not living, then next the mother may maintain the action and further specifies the items of damages to be recovered * * *." Klepper v. Breslin, Fla.1955, 83 So.2d 587, 591.

We come now to the amendment. In 1953, the Florida legislature amended Section 768.01, the Wrongful Death Act, by adding subsection (2). This reads:

> "(2) The right of actions as set forth in subsection (1) above shall extend to and include actions *ex contractu* and *ex delicto*."

3. In Ellis v. Brown, Fla.1955, 77 So.2d 845, 849, the court pointed out:
    "[C]ontrary to the provisions of Lord Campbell's Act, the prototype of our Wrongful Death Act, under our Act the exclusive right of action inures to the persons named therein, in the order named, and limits the damages recoverable to such 'as the party * * * entitled to sue may have sustained by reason of the death of the party killed,' Section 768.02 Fla.Stat., F.S.A.; whereas, under Lord Campbell's Act, and those of many other states, the right of action is given to the administrator of the deceased person, who sues for the benefit of all the beneficiaries of the estate of the deceased person. * * * As further evidence of the peculiarity of our Wrongful Death Act, it might be noted that where the deceased person left neither spouse nor child or other person dependent upon him for support, so that

the cause of action devolves upon the administrator of his estate, such administrator can recover the full value of the loss of prospective estate of the decedent, reduced to present worth. * * * So, again, it might be said that it is cheaper to kill a person who leaves a spouse or child or other person dependent upon him for support, than it is to kill a person who is survived by no one in the designated classes. ¶ But, as noted, the inequalities of the Act should be resolved by legislation and not by judicial pronouncement."

4. Alpert observes that the Wrongful Death Act is "Rabelaisian in the Grandeur of its obfuscation". With respect to the Death of Minors Act, he says: "The statute is understandable, construable, and the standards of compensation are workable." Alpert, supra, 153, 156, 170.

The appellant contends that the purpose of this amendment was to allow just such a suit as he brought in this case. This contention in large part rests on an assumed legislative intention to overrule Whiteley v. Webb's City, Inc., Fla.1951, 55 So.2d 730, 731. In Whiteley a divided court held that the personal representative of the deceased could not recover damages from a breach of an implied warranty of fitness. "By the very terms of Lord Campbell's Act and the quoted act", said the court, "the statute was designed to support actions ex delicto and not ex contractu". The appellee argues that the legislature was concerned not with Whiteley but with Graham v. The Novarchos Koundouriotis, D.C.S.D.Fla. 1951, 99 F.Supp. 450, affirmed sub nom. Graham v. A. Lusi, Ltd., 5 Cir., 1953, 206 F.2d 223. In that case the court held the Florida Wrongful Death Act did not encompass a widow's claim for a longshoreman's death caused by unseaworthiness. Appellee suggests that the effort of interested groups to obtain relief designed to help dependents of marine workers were extended to include relief on the death of minor children.

This is not legislative history. This is speculation at its airiest. In terms of written history, expressing what the sponsors of the statute or committees or even individual legislators thought, the legislative history of the amendment is a closed book: committee proceedings and debates of the Florida legislature are not recorded.

■ The dominant fact here in interpreting the statute is the plain language of the amendment limiting its application to the Wrongful Death Act. The amendment is subsection (2) to Section 768.01. Subsection (1) is the law as it was before the amendment. In terms, the 1953 amendment states that "the right of action *as set forth in subsection (1) above*" includes an action *ex contractu*. It would seem then that whatever the sponsors of the amendment may have had in their minds, the Florida legislature wrote the 1953 law as saying that it amended only Section 768.01, the Wrongful Death Act.

We have found no case involving a suit under Section 768.01 by a parent for the wrongful death of a minor child. The logical section for a parent to rely on is Section 768.03, because of the broader basis for recovery of damages and because he need not show dependency. We have found no case in which a Florida court has utilized the language of Section 768.01 to interpret Section 768.03. On the contrary, in Davis v. Florida Power Company, 1913, 64 Fla. 246, 60 So. 759, in interpreting the predecessor of Section 768.03 in connection with the liability of an individual for a wrongful death, as opposed to the liability of a corporation, the court did not resort to the predecessor of Section 768.01 in order to supply the omission. See also Nolan v. Moore, 1913, 81 Fla. 594, 600, 88 So. 601.

The Florida legislature has consistently treated the acts as separate and distinct. Thus, Section 768.03 was adopted as a separate statute, not as an amendment of Section 768.01 and Section 768.02 (both enacted sixteen years earlier). The acts have separate statutes of limitation: Section 768.03 is limited in Section 768.04, but Sections 768.01 and 768.02 are limited in Section 95.11(6). In 1899, when the predecessor of Section 768.03 was first enacted, the prescriptive period was two years for Sections 768.01 and 768.02, but one year for Section 768.03. (Today both have a two-year statute of limitation.) Damages are different under the two statutes. Under Section 768.03 both parents may recover for mental anguish caused by their minor child's death. See Coast Cities Coaches, Inc. v. Donat, Fla. App.1958, 106 So.2d 593. No damages for mental anguish and suffering are recoverable under Sections 768.01 and 768.02. See St. Johns Electric Co. v. Lawler, 1925, 90 Fla. 188, 105 So. 818. We think it is illogical to extend by implication an amendment affecting one statutory cause of action to another statutory cause of action when the two actions have different bases for recovery, different statutes of limitation (originally), different damages, and the parties sue in different capacities.

Appellant argues that Sections 768.01 and 768.03 are in pari materia and he minimizes the differences between the sections. He contends that the Florida legislature enacted Section 768.03 in order to permit an action by the parents (not the personal representative) when an unmarried minor child is wrongfully killed in circumstances that would not provide a right of action under Section 768.01. In support of his view, he cites the section headings as they appear in the official compiled Florida statutes under Chapter 768, entitled "Negligence". Thus, the first section, 768.01, is entitled "Right of action for death" and is a general provision covering the death of "any person". The next two sections, 768.02 and 768.03, deal with the proper parties and the measure of damages. Appellant places great reliance on two recent Florida decisions holding that the primary right of recovery under Sections 768.01 and 768.03 is the same, and that the sections must be construed in pari materia.

■ The impeccable principle that statutes in pari materia must be read together, as with most canons of statutory constructions, has its opposite number in the dichotomy of well-worn but serviceable canons readily available for use on both sides of any disputed question of interpretation. Thus, "a statute is not in pari materia if its scope and aim are distinct or where a legislative design to depart from the general purpose or policy of previous enactments may be apparent."[5] We think it appropriate to apply this canon here, in view of the differences between the sections and the good sense of taking the statutory language as meaning what it says rather than attempting to divine the legislative intention by departing from the plain meaning of the amendment. "[T]here is no canon against using common sense in construing laws as saying what they obviously mean." Mr. Justice Holmes in Roschen v. Ward, 1928, 279 U.S. 337, 339, 49 S.Ct. 336, 73 L.Ed. 722.

■ Appellant contends that "the primary right of recovery" is the same in both Sections 768.01 and 768.03, citing Rehe v. Airport U-Drive, Inc., Fla.1953, 63 So.2d 66 and Brailsford v. Campbell, Fla.1956, 89 So.2d 241. In a technical sense, wrongful death actions are not "derivative", since such actions are for damages suffered by the survivors, as expressly provided in 768.01 and as impliedly provided in 768.03. We take it, however, that these two Florida decisions hold that no action may be maintained under either section unless the decedent could have brought the action had he survived. Certain legal consequences flow from the fact that the "secondary rights" of the survivors are related to the "primary" wrong to the decedent. Thus, in Rehe v. Airport U-Drive, Inc., the court held that a verdict and judgment for the defendant in a suit brought by a father, as parent, under Section 768.03, estopped the father from proceeding as administrator of his child's estate under Section 768.01, against the same defendant. But both suits were based on the same acts of negligence. In Brailsford the court held that the Florida Automobile Guest Statute, allowing recovery for injury caused by simple negligence, applies to an action by a parent, as parent, under Section 768.03. The rationale of Brailsford is that the Guest Statute must be construed as applying to actions for wrongful death as well as to actions by an injured guest.[6] The opinion does not

---

5. Llewellyn, Remarks on the Theory of Appellate Decisions and the Rules or Canons about how Statutes are to be construed. 3 Vand.L.Rev. 395, 402 (1950).

6. The court stated: "But we do not construe the Guest Statute as applying only to actions by the injured guest or to 'derivative' actions such as those brought

by the personal representative of a deceased person under Section 45.11, Fla. Stat.1953, F.S.A., the so-called Survival Statute. The Guest Statute in express terms applies to a 'cause of action for damages * * * for injury, death or loss.' * * * [W]hen construed as a whole, in the light of the legislative intent, we have no doubt that it was intended to apply to actions for wrongful

say that the same yardstick must be used on Section 768.01 as on Section 768.03. Nor does it say that the nature of the "primary right of recovery" is the same under both sections. Neither Rehe nor Brailsford supports the contention that Section 768.03 was impliedly amended by the 1953 amendment to Section 768.01.

The appellant's argument that the general heading for Section 768.01 and its language that the section applies to the wrongful death of "any person" is offset by the specific heading of Section 768.03 and its language that the section applies "whenever the death of any minor child shall be caused by the wrongful act * * *". As opposed to Section 768.01, "Section 768.03 is specifically directed toward the wrongful death of minors and hence would seem logically to overrule any application to it of the general wrongful death statute". Alpert, Florida Death Acts, 10 U.Fla.L.Rev. 153, 171 (1957). In some circumstances section headings may have a value as an aid to interpretation. Here, they add little, if anything, to resolution of the issue before us. The headings were added long after the statutes were enacted. They yield to the specific language in the body of the sections.

We realize that our construction of the law allows a dependent parent suing under the Wrongful Death Act to recover upon implied warranty; that the same parent suing as a parent under the Death of Minors Act is not permitted to recover upon an implied warranty. This result is not necessarily anomalous. We have no license to say that it is strange for the Florida legislature to broaden liability for wrongful death, under Sections 768.01 and 768.02, when the decedent (adult or child) is survived by dependents. Section 768.03, applying to the death of minors only, operates without regard to the survivors' being dependent on the decedent.

 Wrongful death statutes are remedial. They must be liberally construed. But they "should not by judicial construction be extended to include rights of action that are not within the law-making intent as shown by the language used". Nolan v. Moore, 1920, 81 Fla. 594, 88 So. 601, 603. On this appeal, we feel compelled to hold, notwithstanding a natural sympathy for Charleen's bereaved parents, that a parent cannot under Section 768.03, Florida Statutes, F.S.A., maintain an action for the wrongful death of a minor child based upon breach of an implied warranty.

Judgment is affirmed.

---

death as well as to actions by the injured guest, or his personal representative, for the injuries suffered by the guest himself. It was also clearly intended to apply to actions for 'injury, death or loss' involving a minor child who is a guest passenger, since it specifically excepted from its provisions 'school children * * * being transported to or from schools * * *' and thus, by implication, includes within its terms all other minor children." Brailsford v. Campbell, Fla. 1956, 89 So.2d 241, 242–43.