279 So.2d 436

**Clinton GEOHAGAN, Administrator of the Estate of Barbara Geohagan Evans, Deceased**

**v.**

**GENERAL MOTORS CORP. and McDaniel Motor Co.**

**SC 101**

Supreme Court of Alabama.

May 24, 1973.

Rehearing Denied July 5, 1973.

Tipler, Fuller & Barnes, Andalusia, for appellant.

Powell & Sikes, Andalusia, for appellee, General Motors Corp.

Rushton, Stakely, Johnston & Garrett, Montgomery, for appellee, McDaniel Motor Co.

HARWOOD, Justice.

This is a products liability case involving a claim for wrongful death instituted by the administrator of the estate of plaintiff's decedent against General Motors Corp. (General Motors), the manufacturer of the vehicle involved, and McDaniel Motor Co. (McDaniel), the retail vendor. The complaint, as finally amended, presented two counts; viz, Count One-D and Count Two-C, to which the defendants ultimately plead the general issue in short by consent. In substance Count One-D charges that the combined negligence of the defendants proximately resulted in the death of the plaintiff's intestate, Barbara Geohagan Evans. Count Two-C alleges that in connection with the sale of the vehicle the defendants impliedly warranted its suitability and fitness, the breach of which resulted in the fatal injury to plaintiff's intestate.

The trial court, at the conclusion of the testimony, granted each defendant's request for the affirmative charge as to Count Two-C and submitted the case to the jury on Count One-D only. This appeal is taken from the judgment rendered by the Circuit Court in accordance with the jury's verdict in favor of the defendants-appellees, and from the Circuit Court's action in granting defendants' request for the affirmative charge as to Count Two-C.

During her lifetime, Barbara Geohagan Evans was married to Rodney Evans. Mr. Evans was killed in military service subsequent to the time of his wife's fatal crash

and prior to the date this suit was commenced by George Geohagan, Barbara's father, as administrator of her estate. On September 30, 1967, Rodney Evans purchased a new 1968 Chevrolet Camero from McDaniel. The car was undisputedly a General Motors product. In June of 1968, Rodney Evans and Barbara Geohagan were married and during their mutual lifetime the automobile involved was used by each of them as the family car. Barbara was driving the car alone on September 5, 1968, along Highway 52 between Opp and Samson, Alabama, at which time the car left the road at a high rate of speed, ran into a culvert and crashed into a utility pole. Barbara was killed in the crash.

The factual theory of the plaintiff's case was that the crash resulted from defective motor mounts, the failure of which caused the engine to shift within the engine compartment locking the accelerator at full throttle. Since this court's opinion rests solely on the question of law presented by the pleadings, no further recitation of the facts is deemed necessary. Suffice it here to observe that the evidence in support of the opposing contentions of plaintiff and of defendants relating to the cause of the crash was in conflict.

The matter urged by the appellant as error pertains to those assignments of error to the effect that the lower court erred in giving the affirmative charge for the defendants (appellees) as to the breach of implied warranty count, i. e., Count Two-C.

The basic issue here considered is whether an action for breach of implied warranty will legally sustain a claim for wrongful death. Realizing that this is a cause of first impression in Alabama, we take special note of the fact that we have been favored with excellent briefs by counsel for each of the parties.

■ In Alabama, as generally elsewhere, punitive damages are not recoverable for breach of contract. Wood v. Citronelle-Mobile Gathering System, 5th Cir., 409 F.2d 367.

■ As stated by de Graffenried, J., in Millsap v. Woolf, 1 Ala.App. 599, 56 So. 22:

"A warranty, in the sale of a chattel, is a collateral undertaking on the part of the seller as to the quality of or title to the subject of the sale. It may be express or implied. * * *

"As a warranty, express or implied, is a contract, the good faith of the seller in making it is not material. In actions for breach of warranty, the only questions are: Was there a contract of warranty? If so, has there been a breach? And if so, the amount of damages suffered by the purchaser thereby. Scott v. Holland, 132 Ala. 389, 31 So. 514.

* * * * * *

"There is a clear distinction between an action for a breach of warranty and one for deceit in the sale of a chattel; in the first case the action is ex contractu and in the second, ex delicto. 30 Am. & Eng.Ency.Law, p. 129; Scott v. Holland, supra. * * *"

Regardless of the view in the earlier development of the action of breach of warranty that it was based on tort, certainly as the action developed it was regarded as contractual, and such was the view of our cases at the time of the passage of the Uniform Commercial Code by the Alabama Legislature in 1965, which code was to be effective at midnight on 31 December 1966.

■ Damages for breach of a contract (or breach of warranty) are awarded to put a party in the same position he would have occupied if the contract had not been violated. Coastal States Life Ins. Co. v. Gass, 278 Ala. 656, 180 So.2d 255. On the other hand, damages under our wrongful death statutes are punitive in nature, and are not compensatory. Crenshaw v. Alabama Freight, Inc., 287 Ala. 372, 252 So.2d 33. Such view is compatible only with the concept that any action permissible under our wrongful death acts must in nature be in tort and not in contract.

The Alabama Uniform Commercial Code is contained in Act No. 549, 1965 Acts of

Alabama. This Act appears as Secs. 1–101 through 9–505, of Title 7A, Michies Recompiled Code of Alabama 1958 (1966 Added Volume). For convenience we will refer to the provisions of the Act as they appear in the Recompiled Code.

Secs. 1–102(1) and 1–102(2)(a) and (b) are as follows:

"(1) This title [Uniform Commercial Code] shall be liberally construed and applied to promote its underlying purposes and policies.

"(2) Underlying policies and purposes of this title are

"(a) to simplify, clarify and modernize the law *governing commercial transactions;*

"(b) to permit the continued expansion of *commercial practices* through custom, usage and agreement of the parties." (Emphasis ours.)

Thus it is crystal clear that the purpose of the legislature in passing our version of the Uniform Commercial Code was to regulate commercial transactions. By no stretch of the imagination can it be deemed that actions for wrongful death are commercial transactions.

■ Our decisions since the enactment of our wrongful death acts have made it clear that such acts are intended to protect human life, to prevent homicide, and to impose civil punishment on takers of human life. The damages awarded are punitive in nature. The personal representative in prosecuting a wrongful death action acts as an agent of legislative appointment for declaring the public policy evidenced by the wrongful death acts. An action under our wrongful death acts comes into being only on death from some wrongful act. See innumerable citations and annotations under Sec. 123, Title 7, Code of Alabama 1940.

Thus a wrongful death action differs entirely from an action for a breach of warranty, express or implied, in a contract, for as respects liability for breach of a war-

ranty the good faith, or lack of faith, in promisor in making the contract of warranty is immaterial. Attalla Oil & Fertilizer Co. v. Goddard, 207 Ala. 287, 92 So. 794.

The above principles were well settled by the decisions of this court (and the courts of many of our sister states) at the time of the passage of our Uniform Commercial Code. Our wrongful death acts, and the decisions of this court thereunder have been the law of this state for decades.

■ Where a statute enumerates certain things on which it is to operate, the statute is to be construed as excluding from its effect all things not expressly mentioned. Champion v. McLean, 266 Ala. 103, 95 So.2d 82.

We do not see how the legislature could have more clearly expressed the operative scope of the Alabama Uniform Commercial Code than it did in the Section 1–102(2), Subsections (a) and (b) of Title 7A, above mentioned, i. e., that the underlying purpose and policy of the act was "to simplify, clarify, and modernize the law governing *commercial transactions,*" and "to permit the continued expansion of *commercial practices* through custom, usage and agreement of the parties." (Emphasis ours.)

So far as can be determined from a reading of our Uniform Commercial Code, there is not one word, sentence, paragraph, clause, or section which in anywise even suggests that for the breach of an express or implied warranty in a contract any person is given a right to maintain an action for a wrongful death. On the other hand, the precision with which the legislature has defined the purpose and policy of the act, limiting the same to commercial transactions, clearly demonstrates that it was not the intent of the legislature in enacting the Uniform Commercial Code to create a wrongful death action in case of a breach of warranty of the contract involved.

This precise point was before the U.S. District Court for the Northern District of Alabama in Knight, Admr. v. Collins, et

al., 327 F.Supp. 97 (1971). In an opinion by Pointer, J., it was set forth:

' "To the extent that plaintiff seeks to bring a cause for breach of contract within the Homicide Act—Title 7, § 119, or its adult companion, Title 7, § 123— the Alabama Supreme Court has clearly foreclosed the way. Thaggard v. Vafes, 218 Ala. 609, 119 So. 647 (1928). Moreover, this same decision assumes the rule that an action *ex contractu* for damage to the person causing death would not otherwise survive (insofar as the right of action held by the deceased). There may be good reason to question the correctness of the reasoning underlying such a rule—see, e.g., Smedley, 'Wrongful Death—Basis of Common Law Rules,' 13 Vanderbilt Law Review 605 (1960)—but our role is limited here to discerning the rule adopted by the Alabama Supreme Court. In a similar situation, Judge Lynne of this district court ruled that a count for breach of implied warranty causing death could not be maintained under Alabama law. (Unpublished ruling, Wheeler v. General Motors Corp., U.S.Dist.Court, N.D.Ala., # 70–315). The Fifth Circuit has reached the same conclusion as to a comparable Florida statute. Latimer v. Sears, Roebuck & Co.,

285 F.2d 152 (5th Cir. 1960)."

It is to be noted that in the special concurrence of Faulkner, J., and the dissenting opinion of Jones, J., in Battles v. Pierson Chevrolet, 290 Ala. 98, 274 So.2d 281, it is stated that Georgia does not allow recovery for death in a breach of warranty action. Apparently, such is also the rule in Florida. To like effect see Post v. Manitowoc Engineering Co., 88 N.J.Super 199, 211 A.2d 386; Foran v. Carangelo, 153 Conn. 356, 216 A.2d 638; Bloss v. Dr. C. R. Woodan Sanitarium Co., 319 Mo. 1061, 5 S.W.2d 367; Wadleigh v. Howson, 88 N.H. 365, 189 A. 865. See also annotation in 86 A.L.R.2d 316.

We hold that no contractual cause of action for wrongful death is created by our Uniform Commercial Code arising from a breach of warranty, and that actions for wrongful death can arise in this state and be processed only under our wrongful death acts.

The lower court therefore did not err in withdrawn from the jury's consideration Count 2C, and the judgment here appealed from is due to be affirmed.

Affirmed.

MERRILL, COLEMAN, BLOODWORTH and McCALL, JJ., concur.

MADDOX, J., concurs specially.

HEFLIN, C. J., and FAULKNER and JONES, JJ., dissent.

MADDOX, Justice (concurring specially).

I agree with the majority that a wrongful death action cannot be maintained for breach of an implied warranty, but since the dissenting opinions discuss the effect of the Uniform Commercial Code, Title 7A, Section 2–318 and its controlling effect on this litigation, I desire to express my separate views on this question, which is one of first impression insofar as I can determine. I can appreciate some of the views the dissenters have about what effect the adoption of the Uniform Commercial Code, with amendments, had on products liability law in Alabama. I think its adoption had a tremendous impact. For one thing, its adoption loosened the privity requirement, vertically and horizontally, in product liability cases. One legal writer thinks that the adoption of the "non-uniform" Commercial Code transformed "the Alabama personal injury warranty action, from the contractual beast it has historically seemed to be, into a new animal enjoying a predominantly tort pedigree."[1] I am

---

1. McDonnell, The New Privity Puzzle: Products Liability Under Alabama's Uniform Commercial Code, 22 Ala.L.Rev. 455, 484 (1970).

unable to agree such a transformation occurred and that the Legislature changed the nature of the warranty action from one sounding in contract to one sounding in tort. Admittedly, the Legislature stripped the "warranty" action of much of its former contract regalia. In other words, while the "warranty" action was stripped of much of its contract cloak, it was not stripped of its name.

I am also aware that it is generally accepted that the action for breach of warranty originally was considered to be *tortious in nature*. Some of the legal scholars think the name of the product liability action has always been tort and that it has merely paraded around in "warranty" or contract clothing for some 40 or 50 years. Prosser classified "warranty" as "a freak hybrid born of the illicit intercourse of tort and contract, (which) had always been recognized as bearing to some extent the aspects of a tort." Prosser, The Fall of the Citadel, 50 Minn.L.Rev. 791, 800 (1966).

Dean Prosser states that the trouble always lay with the use of the word "warranty" and he may be right. He maintains the "warranty" theory has been from the outset only a rather transparent device to accomplish the desired result of strict liability. He pointed out in an article entitled "The Fall of the Citadel," 50 Minn.L. Rev. 791, 802, as follows:

> "Although the writer was perhaps the first to voice it, the suggestion was sufficiently obvious that all of the trouble lay with the one word 'warranty,' which had been from the outset only a rather transparent device to accomplish the desired result of strict liability. No one disputed that the 'warranty' was a matter of strict liability. No one denied that where there was no privity, liability to the consumer could not sound in contract and must be a matter of tort. Why not, then, talk of the strict liability in tort, a thing familiar enough in the law of animals, abnormally dangerous activities, nuisance, workmen's compensation, libel, misrepresentation and respondeat superi-

or, and discard the word 'warranty' with all its contract implications?  . . . "

Unquestionably, by adoption of the Uniform Commercial Code, the Legislature intended to provide, and did provide, consumer protection which was unavailable before in instances where products were not reasonably safe. However, in granting this consumer protection the Legislature used the word "warranty," which had acquired a special meaning in the field of products liability. While the Legislature knocked out the requirement of privity in product liability cases, horizontally and vertically, in my opinion, I do not think it changed the nature of the action for breach of warranty from ex contractu to ex delicto. In arriving at this belief, I recognize that there are decisions which hold that in products liability cases, regardless of the *form of the action,* that the tort aspects of warranty call for the application of a tort rather than a contract rule in allowing recovery for wrongful death. But many cases have held to the contrary, on the ground that the gist of warranty has become contract, and it is not included within the wrongful death statutes. W. Prosser, Law of Torts 635, § 95 (4th ed. 1971). See also, Annotation: Action ex contractu for damages caused by death, 86 A.L.R.2d 316, 317 (1962), where it is stated:

> "While there is some authority to the contrary, it appears to be generally recognized that in absence of statute an action ex contractu is not the appropriate remedy to recover damages resulting from the death of another."

I believe Alabama has consistently recognized an action for breach of warranty to be contractual in nature. Consequently, I cannot interpret Section 2–318 of the Commercial Code to state that the breach of an express or implied warranty is an action ex delicto and therefore a "wrongful act" under Alabama's Wrongful Death Statute.

This court has held that the breach of a contract is not a wrongful or negligent act

under our Wrongful Death Statute. Thaggard v. Vafes, 218 Ala. 609, 119 So. 647 (1928). See also Knight v. Collins, 327 F. Supp. 97 (N.D.Ala.1971); cf. Latimer v. Sears Roebuck and Co., 285 F.2d 152 (5th Cir. 1960). Contra, Chrobak v. Textron, Inc., Civil No. 1012–S (M.D.Ala., filed Sept. 2, 1969) (unpublished ruling) (Interpreting Tit. 7A, § 2–318).

As I understand the position taken by the dissenters, they feel that Alabama has, by the passage of the Uniform Commercial Code, with amendments, established a "public duty," the breach of which is a "wrongful act" under our Wrongful Death Act. I can agree basically with the position taken by the dissenters in this respect, but I must point out that the plaintiff below did not allege this "public duty." Plaintiff did not allege its breach by the defendants. On the contrary, the plaintiff alleged that the defendants *"warranted expressly or by implication* that said automobile was fit for normal and ordinary use and operation as intended and was of merchantable quality" and "that as a proximate result and consequence of said *breach of warranty* by the defendants, as aforesaid, plaintiff's intestate suffered such severe injuries that she died . . .'" I believe that most lawyers and judges would classify this pleading as an ex contractu action. I do.

Had the plaintiff alleged a cause of action under the tort doctrine of strict liability as spelled out in the Restatement (Second) of Torts, § 402A (1965), I believe the giving of the affirmative charge would have been improper. § 402A of the Restatement (Second) of Torts provides:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

In other words, I believe that this Court, in view of the policy expressed in the Uniform Commercial Code to protect users and consumers and persons affected by products, and in view of the recent trends in the development of the law in product liability cases, would adopt the doctrine of strict liability set out in the Restatement. I believe that this Court might hold that those protected against harm included not only users or consumers but any person who may be *affected* by the goods and who is personally injured. The justification for allowing such an ex delicto action for strict liability has been said to be that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it. Properly presented, I believe this Court might approve the strict liability doctrine. But the warranty count here under consideration makes no attempt to claim under the theory of strict liability.

I believe that the comment in the Restatement (Second) of Torts on § 402A, above quoted, sustains my view that the rule of strict liability which I suggest should be available in personal injury actions, whether the injury is fatal or nonfatal. But I also believe that such actions are not governed by the provisions of the Uniform Sales Act, or those of the Uni-

form Commercial Code, as to *warranties*. Comment "m" states, in part:

"A number of courts, seeking a theoretical basis for the liability, have resorted to a "warranty," either running with the goods sold, by analogy to covenants running with the land, or made directly to the consumer without contract. In some instances this theory has proved to be an unfortunate one. Although warranty was in its origin a matter of tort liability, and it is generally agreed that a tort action will still lie for its breach, it has become so identified in practice with a contract of sale between the plaintiff and the defendant that the warranty theory has become something of an obstacle to the recognition of the strict liability where there is no such contract. There is nothing in this Section which would prevent any court from treating the rule stated as a matter of 'warranty' to the user or consumer. But if this is done, it should be recognized and understood that the 'warranty' is a very different kind of warranty from those usually found in the sale of goods, and that it is not subject to the various contract rules which have grown up to surround such sales.

"The rule stated in this Section does not require any reliance on the part of the consumer upon the reputation, skill, or judgment of the seller who is to be held liable, nor any representation or undertaking on the part of that seller. The seller is strictly liable although, as is frequently the case, the consumer does not even know who he is at the time of the consumption. The rule stated in this Section is not governed by the provisions of the Uniform Sales Act, or those of the Uniform Commercial Code, as to warranties; and it is not affected by limitations on the scope and content of warranties, or by limitation to 'buyer' and 'seller' in those statutes. Nor is the consumer required to give notice to the seller of his injury within a reasonable time after it occurs, as is provided by the Uniform Act. The consumer's cause of action does not depend upon the validity of his contract with the person from whom he acquires the product, and it is not affected by any disclaimer or other agreement, whether it be between the seller and his immediate buyer, or attached to and accompanying the product into the consumer's hands. In short, 'warranty' must be given a new and different meaning if it is used in connection with this Section. It is much simpler to regard the liability here stated as merely one of strict liability in tort."

Consequently, under present law, I think a party to suffers a *non-fatal* injury has two routes he could take. He can allege that there was an express or implied warranty, that it was breached and as a proximate result of the breach he suffered damages. In such cases, the Uniform Commercial Code does not require him to show privity. I personally think that in non-fatal injury cases, he could sue under the theory of strict liability which I have herein set forth. In death cases, I think an action for breach of warranty would be inappropriate for the reasons I have set forth, that is, because this Court and a majority of other courts have so held such remedy is inappropriate. In death cases, the appropriate remedy might be a suit under the so-called manufacturer's liability doctrine or under the doctrine of strict liability set forth in the Restatement (Second) of Torts.

The plaintiff below had a negligence count against both defendants which went to the jury. The plaintiff presented much evidence that the defendants manufactured, sold, or serviced a product which was not reasonably safe and that plaintiff's intestate was killed as a proximate result of the defective product, but the jury returned a verdict in favor of the defendant on this negligence count. Plaintiff assumed the higher burden of proving that "his intestate suffered said injuries and died as aforesaid as a proximate consequence of the combined *negligence* of said defendants

in that the said defendant, General Motors Corporation, a corporation, *negligently* designed, engineered, manufactured, assembled or sold said automobile for use as a transportation vehicle in a dangerous condition . . . and the defendant, McDaniel Motor Company, a partnership, *negligently* sold and serviced said defective automobile and its components . . ." As is stated in Comment "a" under Restatement (Second) of Torts, § 402A:

> " . . . The rule stated here is not exclusive, and does not preclude liability based upon the alternative ground of *negligence* of the seller, where such *negligence can be proved*." (Emphasis added.)

Having selected the theories upon which he would proceed to fasten liability on the defendants, we cannot pass on what might have been. As to the warranty count, I think he selected an inappropriate remedy. As to his negligence count, on which the jury found against him, I think he selected the alternative which required more proof than had he elected to proceed under the theory of strict liability, but that was a pleading choice.

Since the majority does not discuss in detail some of the points I have discussed, I took the liberty to express gratuitously my personal views on this matter of first impression in this special concurring opinion. My views are my own and should not be taken to express the thinking of either the majority or minority of this Court.

JONES, Justice (dissenting).

I respectfully dissent.

In ruling, as a matter of law, that the warranty count was legally insufficient, the trial court stated, "Punitive damages are not allowed for breach of contract". Two concepts are inherent in this ruling: First, the legal nature and judicial purpose of "punitive" damages—the exclusive measure of damages in actions brought under the Alabama Wrongful Death Statute[1]; and secondly, the legal nature and character of an action for breach of implied warranty in Alabama. Before summarizing the respective contentions of the parties, I will first briefly review the history of the cause of action for wrongful death, and then I will analyze the present status of the nature of an action for breach of implied warranty.

The legal conclusion that an individual action for personal injuries abated with the death of an individual is based on the ancient maxim: Actio personalis moritur cum persona—a personal action dies with the person. Although the judicial etiology of this principle is questionable,[2] it ultimately became ingrained in the fabric of the common law. Lord Ellenborough, in Baker v. Bolton, 1 Camp. 493, 170 Eng. Rep. 1033 (K.B., 1808), laid down the rule that there was no cause of action for wrongful death. Virtually every legal scholar who has considered the rule has criticized it ("whose forte was never common sense", says Dean Prosser).[3]

> " . . . no reason has ever been assigned for the existence of this rule which would satisfy an enlightened court of modern times." Harris v. Nashville Trust Co., 128 Tenn. 573, 162 S.W. 584, 586 (1914).

Despite its manifest harshness, however, this was the status of the law when Alabama became a state in 1819 and by its Constitution adopted the common law of

1. The rule is the same whether the action is governed by §§ 119 or 123, Title 7, Code of Alabama 1940, as amended. Louisville & Nashville R. R. Co. v. Bogue, 177 Ala. 349, 58 So. 392 (1912).

2. Smedley, Wrongful Death—Basis of Common Law Rules, 13 Vanderbilt L. Rev. 605 (1960).

3. See, e. g., Winfield, Death as Affecting Liability in Tort, 29 Columbia L.Rev. 239 (1929); Malone, The Genesis of Wrongful Death, 17 Stanford L.Rev. 1043 (1965).

England.[4] Historians have credited the industrial revolution, its impact in augmenting the mobility of society and the concomitant increase in fatal accidents, with the intensification of the public's rejection of this execrable rule: Death did not create liability; rather death extinguished liability. The conscience of society was ultimately satisfied in England in 1846 by the passage of Lord Campbell's Act. All fifty American states presently have wrongful death statutes. While most of these statutes are modeled after Lord Campbell's act, which raises a new cause of action for the benefit of certain designated beneficiaries—measuring damages by a broadened concept of pecuniary loss to the family survivors, a minority of the states have death acts in the nature of survival statutes—measuring recovery by the loss to decedent's estate; and two states, Alabama and Massachusetts, have statutes which, by judicial interpretation, are penal in nature —measuring damages in accordance with the degree of defendant's culpability. That the Alabama Wrongful Death Statute created a new cause of action that was unknown to the common law has ofttimes been observed by this Court. Parker v. Fies & Sons, 243 Ala. 348, 10 So.2d 13 (1942); Breed v. Atlanta, B. & C. R. Co., 241 Ala. 640, 4 So.2d 315 (1941); Kennedy v. Davis, 171 Ala. 609, 55 So. 104 (1911). Thus, it can be seen that its manifest purpose was to afford redress in cases where no redress obtained at the common law and thereby to ameliorate the harsh rule that denied recovery if the injured party died, while permitting damages if the person lived.

It is only against the background of this historical perspective that the true nature of such punitive damages, as are permitted in death cases in Alabama, can be understood.

". . . the purpose and result of the suit therein provided were not a mere solatium to the wounded feelings of surviving relations, nor compensation for the last [sic] earnings of the slain. We think the statute has a wider aim and scope. It is punitive in its purposes. Punitive of the person or corporation by which the wrong is done, to stimulate diligence and to check violence, in order thereby to give greater security to human life; 'to prevent homicides.'" The South and North Ala. RR. Co. v. Sullivan, 59 Ala. 272, at pp. 278, 279 (1877).

I now turn my attention to an analysis of the present nature of an action for breach of implied warranty. The trial court construed Count Two-C as an ex contractu action sounding purely in contract. It is essential to note that in Count Two-C the plaintiff did not attempt to characterize the nature of his action as either contractual or tortious; he merely plead a "breach of implied warranty". The contractual characterization is, as we have taken pains to observe, the trial court's legal conclusion.

Purely from a historical standpoint, it is generally agreed that the action of breach of warranty was originally tortious in nature, having its origin in misrepresentation or deceit.

"In its inception the liability was based on tort, and the action was on the case." Prosser, Law of Torts (4th Ed.) p. 634.

Over the years, because of its close association with the law of sales, the action for breach of warranty gradually acquired a contractual flavor. It was this association that compelled this Court long ago to hold:

"The warranty of the seller of personal property does not, as a rule impose any liability upon him as to third persons who are in no way a party to the contract." Birmingham Chero-Cola Bottling Co. v. Clark, 205 Ala. 678, p. 680, 89 So. 64, p. 65 (1921).

4. Smith v. United Construction Workers, 271 Ala. 42, 122 So.2d 153 (1960); Title 1, § 3, Code of Alabama 1940.

More recently it was noted in the case of Harnischfeger Corp. v. Harris, 280 Ala. 93, 190 So.2d 286 (1966):

"In effect, we are requested to overturn the long-existing rule in this jurisdiction that there must be privity of contract between a seller and a person injured by a defect in the article sold who seeks to recover for such injury in an action against the seller for a breach of warranty. (citing). Although this is a 'judge-made' rule which could be changed by another 'judge-made' rule, we entertain the view that, because of its long existence as a part of the jurisprudence of this State, it would be more appropriate for its demise to be effectuated by legislative action, if it is to be overturned." Ibid, p. 97, 190 So.2d p. 289.

The Legislature has since spoken and by the express language of the Code of Alabama, Title 7A, § 2–318, a seller's warranty is specifically made applicable to any "natural person if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty". I must parenthetically note that it is perfectly clear, both from the language of our Homicide Act and from our cases, that an action for wrongful death is the legal equivalent to an action for injury to the person:

"Although the personal injury has resulted in death, yet the action is for the personal injury . . ." Ala. Great Southern Ry. Co. v. Ambrose, 163 Ala. 220, 50 So. 1030 (1909).[5]

The effect of § 2–318 is to affirmatively extend the ambit of privity so as to embrace all natural persons who might reasonably be expected to use, consume, or be affected by the product.[6]

The Alabama version of the Uniform Commercial Code was in effect at all pertinent times referred to in the plaintiff's complaint and governs the relationship that existed between the plaintiff and the defendants insofar as Count Two-C is concerned. We must, therefore, look to this act to determine the present status and legal personality of an action for breach of implied warranty. That is to say, the requirement of privity having been legislatively resolved, the question as recast now becomes: Is the legal nature of an action for breach of implied warranty under the Alabama "non-uniform" Commercial Code such a "wrongful act or omission" as will sustain a claim under the Alabama Wrongful Death Statute?

It is in this posture and against this historical context that the appellant urges three theories for the proposition that this Court should allow recovery in a claim for wrongful death based on an action for breach of implied warranty.

Theory No. One: The common law rule of Baker v. Bolton, supra, prohibiting recovery for wrongful death applied only to actions ex delicto and did not extend to contract actions. Lord Campbell's Act— and its American progeny—necessarily spoke only to this deficiency. Therefore, since causes of action in contract have never been declared extinguished by death

5. While this case was overruled as to its holding on the venue question, the language quoted above has been reaffirmed by this Court in Harris v. Elliott, 277 Ala. 421, 171 So.2d 237 (1965).

6. The Official Comments numbered 2 and 3 following § 2–318 in the 1966 Recompilation of Title 7A are not appropriate and do not apply to the language of § 2–318 as actually enacted by the Alabama Legislature. Comments 2 and 3 were obviously drafted by the editors of the Commercial Code as being applicable to the official "Uniform" version of § 2–318. The actual wording of § 2–318 incorporated in the Alabama Act is similar to the language originally employed by the drafters of the UCC. Permanent Editorial Board for the Uniform Commercial Code, Report No. 3, p. 13 (1967). See Freedman, Products Liability Under the Uniform Commercial Code, The Practical Lawyer (April, 1964); Bailey, Sales Warranties, Products Liability and the UCC, 4 Willamette L.J. 291; see also McDonnell, The New Privity Puzzle, 22 Ala.L.Rev. 455.

(and, consequently, not under the Baker v. Bolton influence), the present action is cognizable at the common law, separate and apart from the purview of the Alabama Wrongful Death Statute.[7] The premise upon which this theory is based is that, should this Court construe the nature of an action for breach of implied warranty as being "purely contractual", it should nevertheless be maintainable under common law principles.

Theory No. Two: A historical analysis of the action for breach of warranty indicates that its origin is in misrepresentation or deceit; and, consequently, such actions are not purely contractual and, therefore, are maintainable under our Wrongful Death Statute.

Theory No. Three: The Alabama Legislature, by its enactment of a "non-uniform" version of the Uniform Commercial Code, has so infused tortious characteristics into the nature of the implied warranty that the breach of such warranties is a "wrongful act" as contemplated by the Alabama Wrongful Death Statute.

As to these contentions, the defendants reply that the present action is governed by the Alabama Wrongful Death Statute, which permits only the recovery of punitive damages, and further that punitive damages are not recoverable in actions ex contractu. The defendants each rely principally on Treadwell Ford, Inc. v. Leek, 272 Ala. 544, 133 So.2d 24 (1961) in support of their position on this issue.

It is not necessary for this Court to consider, nor do the pleadings properly present, the first of the plaintiff's theories. The trial court's ruling was made on the assumption that the provisions of Title 7, § 123, governed. The failure of the record to reflect that this theory was specifically called to the trial court's attention compels me to pretermit any consideration of this theory and I agree that this case is con-

trolled by our Wrongful Death Statute. The trial court should not be reviewed or reversed on a question of law not clearly presented in the proceedings below. Head v. Triangle Const. Co., 274 Ala. 519, 157 So. 2d 389 (1963).

Likewise, plaintiff's "Theory No. Two" is without merit. Although an academic reconsideration of the historical origin of an action for breach of warranty might have predicted a different result, the Alabama Supreme Court, prior to the enactment of Title 7A, did hold that an action for breach of implied warranty was essentially contractual. Birmingham Chero-Cola Bottling Co., v. Clark, supra.

Plaintiff's "Theory No. Three" only is deemed applicable, and to this contention the defendants' reply must be considered for it correctly expresses the basis of the lower court's ruling. In referring to Title 7A, I have described it as a *"non-uniform"* version of the Uniform Commercial Code. This description is as significant as it is appropriate. Specifically, with reference to "injuries to the person in the case of consumer goods", the Alabama legislature incorporated five separate amendments to the Uniform Commercial Code which must be considered in determining the legal nature of warranties implied by operation of the provisions of Title 7A:

(A). Subsection (5) was added to Section 2–316 for the purpose of prohibiting the seller from excluding or modifying his liability for damages for injuries to the person in the case of consumer goods.

(B). Section 2–318 of the UCC was amended so as to exclude the phrase "who is in the family or household of his buyer or who is a guest in his home", which phrase appeared in the Uniform Commercial Code as the limiting description of the term "natural person".

(C). Section 2–714 was amended so as to add the following quoted language at

---

7. See Gaudette v. Webb, 284 N.E.2d 222 (Mass., 1972); Moragne v. States Ma- rine Lines, Inc., 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970).

the end of Subsection (2) of the uniform version:

> ". . . and nothing in this section shall be construed so as to limit the seller's liability for damages for injury to the person in the case of consumer goods. Damages in an action for injury to the person include those damages ordinarily allowable in such actions at law."

(D). Section 2–719 dealing with the seller's privilege to contractually modify or limit the buyer's remedy was amended so as to add Subsection (4) which provides:

> "Nothing in this section or in the preceding section shall be construed so as to limit the seller's liability for damages for injury to the person in the case of consumer goods."

(E). Section 2–725 relating to the statute of limitations was amended so as to add the quoted phrase at the conclusion of Subsection (2):

> ". . . however, a cause of action for damages for injury to the person in the case of consumer goods shall accrue when the injury occurs."

The obvious import of each of these amendments is to amplify the legal rights of the buyer in the posture of a products liability case beyond the scope of the *Uniform* Commerical Code; and to this extent they reflect a legislative intent that is harmonious with the judicial trend expressed in a growing majority of cases over the country. See Prosser, The Fall of the Citadel, 50 Minn.L.Rev. 791 (1966). The amendments, in their composite effect, make it clear that the intention of the Alabama Legislature in adopting a modified version of the Commercial Code was to provide the consumer, at least in cases involving "injury to the person", with a right of action for breach of warranty— the nature of which is as much, if not more, tortious as it is contractual. See Springfield v. Williams Plumbing Supply Co., 249 S.C. 130, 153 S.E.2d 184 (1967); Chairaluce v. Stanley Warner Management Corp., 236 F. Supp. 385 (D. C., Conn., 1964). Additionally, §§ 1–102 and 1–106 mandate a liberal construction with respect to such remedies.[8]

The purpose of tort law, at least since the beginning of the 20th Century, has been to provide a civil remedy in situations where the plaintiff's legally protected interests have been injured by the defendant's violation of publicly imposed duties.[9] The legal personality of warranties, which arise in connection with transactions governed by the Alabama Commercial Code, is compatible with traditional tort concepts in that a breach of warranty thereunder is a violation of a publicly imposed duty. The character of the event necessary to invoke the right and remedy created by the Alabama Wrongful Death Statute is defined by the Statute as any "wrongful act, omission or negligence". In King v. Henkie, 80 Ala. 505, 60 Am.Rep. 119 (1876), this Court held:

> "The condition that the action must be one which could have been maintained by the deceased had it failed to produce death, or had not death ensued, has no reference to the nature of the loss or injury sustained, or the person entitled to recover, but to the circumstances attending the injury, and the nature of the wrongful act or omission which is made the basis of the action."

This Court in Thaggard v. Vafes, 218 Ala. 609, 119 So. 647 (1927), noted by way of dicta that a "mere breach of contract" is not a wrongful or negligent act, within the meaning of the statute, given a right of action for wrongful death. The plain-

---

8. See also Tiger Motor Co. v. McMurty, 284 Ala. 283, 224 So.2d 638 (1969).

9. Winfield, The Foundation of Liability in Tort, 27 Columbia L.Rev., p. 1 (1927); Ashby v. White, 92 Eng.Rep. 126 (1703); Nixon v. Herndon, 273 U.S. 536. 47 S.Ct. 446, 71 L.Ed. 759 (1927).

tiff in *Thaggard* expressly laid his complaint in *negligence* and for this reason the language quoted above was not necessary to the Court's opinion which in fact, held that the complaint properly averred a negligent breach of the defendant's duty. *Thaggard* was a malpractice suit in which the administratrix of the plaintiff's estate alleged in substance that the defendant, a practicing physician, undertook for reward to treat the plaintiff's intestate, and that he "so negligently conducted himself in that regard that plaintiff's intestate died as a proximate consequence of defendant's negligence". The reasoning in support of the actual holding in *Thaggard* is in harmony with our opinion here. The Court in *Thaggard* recognized that, in the absence of pleading affirmatively averring a breach of contract, the underlying relationship between a physician and his patient is not "necessarily contractual" and is not, therefore, a "mere breach of contract".

Similarly, I would hold that the warranties that arise by operation of the Alabama Commercial Code, out of the relationship between the "seller" of a product and "any natural person who might reasonably be expected to use, consume or be affected by" the product, are in the nature of a public duty imposed by law and are not "necessarily contractural" or a "mere contract"; the breach of such warranties are, therefore, maintainable in an action brought under the Alabama Wrongful Death Statute.[10]

The contention most stringently urged by the defendants, and the one expressed by the trial judge in granting the affirmative charge, is the proposition that punitive damages will not lie for a breach of contract. Treadwell Ford, Inc. v. Leek, supra, cited by the defendants, although so hold-

ing, was not a wrongful death case. It is true that punitive damages are not ordinarily recoverable in actions for breach of contract. 22 Am.Jur.2d, Damages, § 245. It is also true that damages under the Alabama Wrongful Death Statute are punitive. Airheart v. Green, 267 Ala. 689, 104 So. 2d 687 (1957).

Judicial juxtaposition of these two rules, however, does not compel the conclusion that an action for breach of implied warranty under the Alabama Wrongful Death Statute would not permit a recovery for punitive damages. Or, stated another way, it does not necessarily follow that an action for wrongful death may not be maintained based on breach of warranty. Our decisions do not allow recovery of punitive damages in a purely personal injury case for simple negligence but do permit their recovery in an action for wanton misconduct. Following the defendants' reasoning, we would be forced to conclude that a death case based on simple negligence would not lie. The clear wording of our statute, permitting recovery for "[any] wrongful act, omission or negligence", illustrates the fallacy of this reasoning. A contrary rule would have the effect of increasing the degree of culpability contemplated by our statute as the requisite for recovery in wrongful death actions.

The punitive aspect of the damages permitted in actions brought under the Alabama Homicide Statute relates to the *nature* and *amount* of the recovery rather than the underlying *right* or recovery; it is not the nature of the recoverable damages that permits the maintenance of a "wrongful death action" but the circumstances attending to injury, and the nature of the wrongful act or omission which is made the basis of the action. Breed v. At-

---

10. For cases from other jurisdictions in accord with the present holding, see Kelley v. Volkswagerwerk, 110 N.H. 369, 268 A.2d 837 (1970) ; Dagley v. The Armstrong Rubber Co., 344 F.2d 245 (7th Cir., Ind., 1965) ; Schuler v. Union News Co., 295 Mass. 350, 4 N.E.2d 465 (1936) ; Zostautas v. St. Anthony De Padua Hospital, 23 Ill.2d 326, 178 N.E. 2d 303 (1961) ; Breach of Warranty as a Basis for a Wrongful Death Action, 51 Iowa L.Rev. 1010 (1966) ; Annot. 86 A.L.R.2d 316.

lanta, B. & C. R. Co., supra; King v. Henkie, supra. The sense in which damages recoverable under the Alabama Homicide Act are deemed punitive is sui generis and the term is not used in the identical sense when applied to actions involving wanton misconduct or intentional injury. For example:

(1) A wrongful death action does not abate by the death of the defendant although he can no longer be punished. Bagley v. Grime, 283 Ala. 688, 220 So.2d 876 (1969); Campbell v. Davis, 274 Ala. 555, 150 So.2d 187 (1962).

(2) Punitive damages may be awarded for simple negligence where the injury results in death. Southern Ry. Co. v. Sherrill, 232 Ala. 184, 167 So. 731 (1936); see also Drummond v. Drummond, 212 Ala. 242, 102 So. 112 (1924).

(3) In wrongful death actions against joint defendants the damages are not divided according to the relative culpability of each defendant. Bell v. Riley Bus Lines, 257 Ala. 120, 57 So.2d 612 (1952).

(4) If by the same wrongful act the defendant causes the death of two people, he cannot in the second case mitigate his responsibility by showing that he has already been sufficiently punished by a verdict in the first case. Kansas City M. & B. R. R. Co. v. Sanders, 98 Ala. 293, 13 So. 57 (1893).

The wording of our wrongful death statute does not characterize the recovery but simply permits "such damages as the jury may assess". Our earliest cases correctly, I think, discerned a legislative intent to equate the value of all human life and established a rule of recovery which reflects that the cardinal factor of culpability is the taking of a human life, regardless of the financial status of the victim, with the *amount* of recovery keyed to the *degree* of culpability. Daniel Construction Co. v. Pierce, 270 Ala. 522, 120 So.2d 381 (1959); Richmond & Danville Railroad Co. v. Freeman, 97 Ala. 289, 11 So. 800 (1892);

L. & N. R. R. Co. v. Perkins, 1 Ala.App. 376, 56 So. 105 (1911).

I conclude, therefore, that the previous state of actions arising from breach of warranty has been fundamentally changed by the legislative enactment of the U.C.C. The U.C.C. clearly imposes a public duty with respect to an implied warranty of fitness of consumer goods, and the breach of that duty resulting in personal injury may be redressed by recovery of "those damages ordinarily allowable in such actions at law". Further, when such personal injury results in death, the Alabama Wrongful Death Statute governs that remedy and "those damages ordinarily allowable".

One basic theme runs throughout the majority opinion—that the purpose of the legislature in passing the Alabama version of the U.C.C. was to regulate commercial transactions and that an action for wrongful death is not a commercial transaction. I would merely point out that no cause of action, be it for wrongful death, breach of contract, or negligence, is a commercial transaction.

It is unfortunate, it seems to me, that the majority opinion looks to the ultimate cause of action, rather than to the underlying transaction, to determine a party's right to relief for personal injury—fatal or nonfatal—resulting from a breach of warranty and the public duty imposed by the Code arising therefrom. The underlying transaction giving rise to a cause of action, which should be looked to in determining that the party's right to relief is, in this case, the sale of a defective car. This is the *commercial transaction* which forms the basis of the instant suit, and which ties the case into the U.C.C. The underlying transaction—the sale of the car —rather than the resulting injury or damage sustained should be the determinative factor.

A literal application of the rationale of the majority opinion would exclude recovery for personal injury—nonfatal as well as fatal. It is my view that such an inter-

pretation ignores the liberal remedies afforded by the Code to the consumer public in products liability cases. Likewise, I am puzzled by the failure of the majority opinion to affirm, overrule, or even mention the long-established rule of *Ambrose,* supra, reaffirmed by *Harris,* supra, to the effect that the statutory use of the words "personal injury" includes the ultimate injury—death. Did our legislature in its passage of the U.C.C. not have the right to assume that this Court would follow its own established precedents in giving effect to the remedies provisions of the Code?

I would, therefore, reverse and remand.

HEFLIN, C. J., concurs.

FAULKNER, Justice (dissenting).

I respectfully dissent. It appears to me that the legislature has provided us with a good map and compass, which the majority has read to mean one thing, and I, in the minority, interpret to mean another. I know of no words in the English language any plainer than those used in the Uniform Commercial Code. Section 2–318 of the U.C.C. provides that an action may be brought by any natural person for personal injury resulting from the breach of a warranty. The majority holds that a wrongful death action is not an action for personal injury. I know of but two ways for a person to die. One is by natural causes. The other is by internal or external injury to the body sufficient to produce death.

County One-D in this case alleges injuries which resulted in death.

This Court has held in *Ambrose,* supra, that a wrongful death action is an action for personal injury.

Would this Court, by the use of a time machine, digress to the period before Lord Campbell's Act, and hold that there is no cause of action for wrongful death? Apparently so, because they have certainly reached a medieval result here. I cannot distinguish death resulting from a breach of warranty and death resulting from a tort. In both instances, the person is very dead. I suppose, in view of the majority opinion, that if the dead man had a choice, he had rather go by tort than by breach of warranty. In such instance he may go to his happy hunting ground knowing that the wrongdoer would have to make an accounting for his tortious act, whereas if injury resulted from breach of warranty, the wrongdoer would pray for his death.

The majority go further and hold that punitive damages will not lie for breach of a contract. Simplistically, the majority call contract exactly the same thing as warranty, whereas the best authorities hold that warranty is a hybrid form of action resting somewhere between tort and contract. Justice Jones correctly states that damages for death resulting from breach of warranty awarded under the Homicide Statute are punitive in nature and cannot precisely be equated with punitive damages in an ordinary tort action.

In view of the majority opinion, I believe this question should be taken up by the legislature for clarification of this very important point of law.