The question in this case is whether, in a negligence action, defendant City of Birmingham is entitled to summary judgment because it was granted immunity, when operating a municipal airport, by Code of Ala., Tit. 4, § 24, and Tit. 62, § 660.
We hold the City immune and affirm.
The issue is whether the decision in Jackson v. City ofFlorence, 294 Ala. 592, 320 So.2d 68 (1975), effectively removes immunity granted the City by the Code sections mentioned.
Joseph F. Scotti sued the City of Birmingham after sustaining injuries in a fall allegedly caused by a wet, slippery mat at an entrance doorway of the Birmingham Municipal Airport. Defendant, City, filed a motion for summary judgment, contending it was immune from liability for its negligence at the airport. The motion was granted and the action dismissed. Scotti appealed from the judgment of dismissal.
The Code section upon which the City primarily relies in its motion reads:
 "Governmental function. — The construction, maintenance and operation of municipal airports is hereby declared a public governmental function, and no action or suit shall be brought or maintained against any municipality for or on account of the negligence of such municipality, or its officers, agents, servants or employes [sic], in or about the construction, maintenance, operation superintendence or management of any municipal airport." Code of Ala., Tit. 4, § 24 (Recomp. 1958).
The plaintiff, Scotti, says that as a consequence of our decision in Jackson these statutes are inoperative and municipal immunity from tort liability is abolished, in whatever form and however it may have been established. In that case the specific question addressed was, "* * a re-evaluation of this court's construction of Title 37, § 502, Code. * * *" That decision correctly interpreted that Code section so that it would express its clear legislative intent; abolition of court-made municipal governmental immunity. In spite of the clear legislative mandate of § 502, this court continued adhering to judicially imposed municipal governmental immunity by making a distinction between those functions termed governmental and those termed corporate or proprietary. Giving § 502 its proper interpretation does not deprive municipalities of privileges, or defenses to actions, available under valid legislation; neither are duties imposed, or powers conferred, under such legislation, limited or restricted.
In this case we need not deal with Tit. 62, § 660, supra. We have a definitive legislative expression in Tit. 4, § 24. Under the latter, we will let the will of the legislature prevail, as we made clear in Jackson that we would. We recognized there, as we do here, the legislature's prerogative, within constitutional limitations, to enact legislation respecting municipal governmental liability; and this court's duty to give proper effect to the clear intent of such legislation. The language of Tit. 4, § 24, is specific in expressing the legislature's clear intent: *Page 352 
 "* * * no action or suit shall be brought or maintained against any municipality for or on account of the negligence of such municipality, or of its officers, agents, servants or employes [sic], in or about the construction, maintenance, operation superintendence or management of any municipal airport." (emphasis added)
Scotti says this court, by its language in Jackson, limited the power of the legislature to immunize municipalities from tort liability and only legislation enacted after date of theJackson opinion (1975) could do so. Also, he says, § 24 is an unwarranted intrusion upon the judicial branch that the legislature has no power to make; and in declaring the operation of a municipal airport to be a governmental function, the entire statute is so bound to the abolished judicial doctrine of municipal governmental immunity that it must fall.
To say the legislature had the power, in 1907 (when Tit. 37, § 502, was enacted), to abolish municipal governmental immunity by one statute, but lacked power to extend certain immunities later (in 1931 when Tit. 4, § 24, was passed) is contradictory; to so hold would be judicial usurpation of the very power we recognized in Jackson. Whether the legislature acted within proper constitutional limitations, in granting immunity, is not raised here. Therefore, we make no comment about that question.
That § 24 is not an unwarranted intrusion upon the powers of the judicial branch, not questioned on constitutional grounds, appears from a reading of this opinion and that in Jackson.
Use of the descriptive phrase "governmental function," in the statutes under discussion, to classify an activity is one basis of Scotti's argument that immunity granted by them was abolished in Jackson. True, § 660 refers generally to governmental functions and specifically to recovery of damages for personal injuries resulting from defects in highways. Seemingly, its purpose was to make legislative declaration of the exemption that this court made to its judicially found general rule of municipal governmental immunity. Although § 24 uses the term governmental function, its language is unequivocal in granting immunity in connection with operation of airports. The judgment dismissing this action was correct, therefore it is
AFFIRMED.
HEFLIN, C.J., and BLOODWORTH, FAULKNER and ALMON, JJ., concur.