500 So.2d 1012 (1986)
Tammy R. CHANDLER, etc.
v.
HOSPITAL AUTHORITY OF the CITY OF HUNTSVILLE.
84-1297.
Supreme Court of Alabama.
September 5, 1986.
Rehearing Denied December 19, 1986.
*1013 Robert H. Ford and Daniel F. Aldridge of Brinkley & Ford, Huntsville, for appellants.
Donna S. Pate and Stanley Rodgers of Ford, Caldwell, Ford & Payne, Huntsville, for appellee.
Colleen Samples and Lloyd W. Gathings of Emond & Vines, Birmingham, for amicus curiae Alabama Trial Lawyers Assoc.
JONES, Justice.
Plaintiff Tammy R. Chandler appeals from a summary judgment entered in favor of Defendant Hospital Authority of the City of Huntsville (operator of Huntsville Hospital).
Two issues are presented on appeal: 1) Whether this Court should overrule Geohagan v. General Motors Corp., 291 Ala. 167, 279 So.2d 436 (1973), and allow a wrongful death action ex contractu; and 2) whether the provision granting immunity from tort actions contained within the statutory authority under which the Defendant hospital is organized is constitutional, as against an equal protection challenge, in light of four other public hospital statutes that permit tort actions. We affirm in part (as to Issue No. 1), because we do not overrule Geohagan; reverse in part (as to Issue No. 2), finding a violation of the guarantee of equal protection; and remand.
At 3:00 on the afternoon of August 16, 1983, Tammy Chandler's 15-day-old baby was examined at the Ambulatory Care Center (ACC) in Huntsville. The baby's symptoms were high fever, irritability, crying, and "grunting sounds." ACC's doctors referred the baby to the Huntsville Hospital emergency room. At 4:00 p.m., Huntsville Hospital refused to admit or treat the baby because Plaintiff had neither medical insurance nor the $54 emergency room fee. At 8:00 that same evening, when the baby's symptoms had become more severe, Plaintiff again took her baby to Huntsville Hospital, where treatment and admission were again refused. Finally, at 11:44 that night, Huntsville Hospital's doctors examined and admitted Plaintiff's baby. The baby died the next afternoon from spinal meningitis.
Plaintiff sued ACC and its administrator and doctors and Huntsville Hospital and its administrator and doctors, alleging that her baby's death was caused by the negligent or wanton conduct of these defendants. Plaintiff also claimed that Huntsville Hospital had breached an implied contract by failing to treat her baby with the degree of skill and care required by hospitals in that area, and had breached an express contract *1014 with the United States government under the Hill-Burton Act, which provides money for hospital services to the needy. Plaintiff stated that her baby was an intended recipient of Hill-Burton funds.
The trial judge dismissed the claims against ACC and granted summary judgment in favor of the doctors. No appeal was taken from those rulings. The trial judge also granted summary judgment to the Hospital Authority and the administrator of Huntsville Hospital, and stated the basis of his decision, in substance, as follows: A) In Alabama, a specific statute creates the right to sue for wrongful death. The Alabama Supreme Court has held that the wrongful death statute provides for a tort action and not a contract action for wrongful death (Geohagan, supra); therefore, Plaintiffs' claim in contract is not valid. B) Another Alabama statute, Code 1975, § 22-21-137(2), provides municipal hospital building authorities with immunity from suit and, therefore, prevents Plaintiffs' tort claims. Further, said the trial court, § 22-21-137(2) is not unconstitutional. C) The hospital administrator, as an agent of the Hospital Authority, is afforded the same immunity from suit. Chandler appeals only as to the Hospital Authority.

THE CONTRACT CLAIM
We have made a careful review of both the facts of this case, with respect to Chandler's contract claim for the wrongful death of her son, and the holding in Geohagan, supra. We reaffirm the decision in Geohagan; therefore, we affirm the trial court's holding dismissing Chandler's contract claim.

THE TORT CLAIM
The provisions of Article 5 of Chapter 21 of Title 22 ("Municipal Hospital Building Authorities") (Code 1975, § 22-21-130, et seq.) were enacted in 1961. Act No. 109, 1961 Ala. Acts. The Hospital Building Authority for the City of Huntsville was incorporated on August 3, 1961, under those statutory provisions now compiled in Article 5.
In 1978 the Huntsville City Council, by resolution, amended the certificate of incorporation of the Huntsville Hospital Building Authority. The amendment changed the name of the Huntsville Hospital Building Authority to "Hospital Authority of the City of Huntsville," but sought to continue the day-to-day operations of the Hospital under the powers conferred by Article 5. Therefore, concluded the trial judge, Chandler's cause of action in torta claim for the alleged negligence of Huntsville Hospitalwas due to be dismissed, because of immunity from tort actions provided the Hospital in § 22-21-137(2) of Article 5.
Chandler argues that § 22-21-137(2), granting hospital building authorities immunity from tort actions, is unconstitutional because it deprives persons injured by the negligence of a hospital organized under Article 5 of equal protection of the law as mandated by the State and Federal Constitutions. This argument is premised on the statutory scheme reflected in Title 22, Chapter 21, Code 1975, which chapter contains five separate articles authorizing the organization and operation of public health facilities in Alabama, of which only Article 5 affords immunity from tort actions.
The immunity provision of Article 5 is found in § 22-21-137, which enumerates the "powers and capacities" of a hospital building authority formed under Article 5:
"2. To maintain actions and have actions maintained against it by others in any form of litigation other than an action ex delicto, and to defend any litigation brought against it."
The question of immunity for an authority organized under Article 6 ("County and Municipal Hospital Authorities") is addressed in § 22-21-178:
"No hospital organized under this article shall have governmental sovereignty or immunity."[1]
*1015 Article 6 also specifically provides that corporations authorized under this article may sue and be sued, both in tort and in contract. § 22-21-179.
Similarly, Article 4 ("County Hospital Boards and Corporations," § 22-21-70, et seq.) provides that a county hospital board or corporation has the power "[t]o maintain actions and have actions maintained against it and to defend action [sic] maintained against it," (§ 22-21-77(2)). Article 11 ("Health Care Authorities," § 22-21-310, et seq.) allows a health care authority "[t]o sue and be sued in its own name in civil suits and actions, and to defend suits and actions against it, including suits and actions ex delicto and ex contractu, subject, however, to the provisions of chapter 93 of Title 11 [Tort Claims and Judgments against Local Governmental Entities'], which chapter is hereby made applicable to the authority," (§ 22-21-318(a)(2)). Additionally, Article 3 (§ 22-21-50, et seq.), the statutory authority for the establishment of "Public Hospital Associations," contains no immunity provision. Thus, of the several statutes authorizing the establishment and operation of public hospitals and facilities (Articles 3, 4, 5, 6, and 11), only Article 5 prescribes immunity from tort actions.
This Court addressed the issue of discriminatory classification in Tyson v. Johns-Manville Sales Corp., 399 So.2d 263 (Ala.1981). In that case, Johns-Manville asserted that Act 80-566, enlarging the statute of limitations for bringing civil actions for injuries or deaths due to asbestos exposure, unreasonably discriminated against manufacturers and sellers of asbestos products by singling them out as a class and that, as a result, this legislation had an unconstitutional effect. Recognizing that inherent in governmental regulation is legislative classification, we pointed out that such classification is permissible if reasonably related to the promotion of a valid legislative purpose:
"[T]he Fourteenth Amendment does not deny to the states the power to treat different classes of persons in different ways. The classification must not be unrelated to the objective of the statute and `must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920).
"`Classification is an inherent power of the Legislature but it must not be arbitrary or unreasonable. In order to justify interference by the courts with the wide discretion which the Legislature has in such matters, it should appear that the interests of those generally affected by the act, as distinguished from those of a particular class, require such interference.' In Re: Opinion of the Justices, 252 Ala. 559, 561, 42 So.2d 56 (1949).
"Sellers v. Edwards, 289 Ala. 2, 265 So.2d 438, 439 (1972).
"A statutory discrimination between classes is held to be relevant to a permissible legislative purpose if any state of facts reasonably may be conceived to justify it. McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); State v. Pure Oil Company, 256 Ala. 534, 55 So.2d 843 (1951)." 399 So.2d at 271-72.
Should a legislative classification burden the exercise of a fundamental right, or suggest prejudice against a racial or other minority, heightened judicial scrutiny is required and the "strict scrutiny" test will apply. Where statutory classifications do not involve a suspect class or fundamental right, however, as in this case, the proper standard in analyzing an allegation of unequal protection is the "rational basis" standard. Applying the rational-basis test in Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 314, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520 (1976), the United States Supreme Court stated:

*1016 "We need state only briefly our reasons for agreeing that strict scrutiny is not the proper test for determining whether the mandatory retirement provision denies appellee equal protection. San Antonio School District v. Rodriguez, 411 U.S. 1, 16 [93 S.Ct. 1278, 1287, 36 L.Ed.2d 16] (1973), reaffirmed that equal protection analysis requires strict scrutiny of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class....
"....
"We turn then to examine this state classification under the rational-basis standard. This inquiry employs a relatively relaxed standard reflecting the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one. Perfection in making the necessary classifications is neither possible nor necessary. Dandridge v. Williams, [397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970)]." (Footnotes omitted.)
In applying this "relaxed" standard to the instant case, we look to see if, under any perceivable set of facts, the statutory discrimination in Article 5, which gives immunity to hospitals organized under that statute, is relevant to and justified by a permissible legislative purpose. Counsel for Huntsville Hospital is unable to suggest any rational basis for the distinction, and we do not discern any.
In Tyson, supra, the Court, in applying the test quoted above, found:
"The health, safety, and the provision of a remedy for Alabama citizens who are exposed to asbestos and thereby suffer injury are legitimate and reasonable objectives of the legislature. The classifications specified in the act are Alabama citizens `suffering the effects of any long-term disease process ... caused by exposure to asbestos' and `a third-party tortfeasor ... proximately caus[ing]' the damages, Act No. 80-566, § 1. These classifications bear a `fair and substantial relation' to the above legislative objectives." 399 So.2d at 272.
Here, however, the basic purposes of Articles 3, 4, 5, 6, and 11 are essentially identicalthe authorization of public boards, corporations, or associations for the purpose of owning and operating public health facilities. See § 22-21-50 (Article 3); § 22-21-71 (Article 4); § 22-21-131 (Article 5); § 22-21-171 (Article 6); and § 22-21-311(13) (Article 11). The public entities authorized and organized under these articles also share a substantial identity of corporate powers, including succession in their corporate names; use of a corporate seal; adoption of by-laws; purchase and maintenance of property and equipment; mortgage or lease of corporate property; investment of corporate assets; and selection and training of medical and administrative personnel.
Finding no basis for the immunity classification of § 22-21-137(2) in the structure or basic powers and operations of the hospitals organized under Articles 3, 4, 5, 6, and 11, we must now, therefore, determine if any rational basis exists for this discriminatory immunity provision in the makeup of the prospective patients of these hospitalsthe persons who would be directly affected by the immunity provision of Article 5. That is, does § 22-21-137(2) create an impermissible classification as between patients injured in hospitals organized under Articles 3, 4, 6, and 11 and those injured in a hospital organized under Article 5? We find that § 22-21-137(2), by its very terms, and in comparison with the provisions of Articles 3, 4, 6, and 11, does create a classification which affords unequal protection to patients injured in an Article 5 hospital by depriving them of a remedy in tort for such injuries.
The question, then, again becomes whether there is any rational basis for such classification. The statute, as indicated above, suggests no such basis,[2] and we find *1017 no rational basis either in the eligibility of prospective patients or in those patients' ability or inability to pay for hospital services. Indeed, whether or not prospective patients know a hospital was organized under Article 3 or 4 or 5 or 6 or 11, and whether or not, if tortiously injured while in such a public hospital, they will have a remedy for their injuries, it is most probable that they will simply choose the hospital facility closest to their residences.
Because § 22-21-137(2) creates an impermissible classification, we now address the issue of remedying this constitutional infirmity. We find the principle enunciated in Orr v. Orr, 374 So.2d 895 (Ala.Civ.App. 1979), to be instructive. That is, when the state enacts a statutory scheme which creates an unequal application of law as among two or more classes of citizens without a rational basis for the classification, the discriminatory portions of such a statute are constitutionally impugned.
In 1979, the Court of Civil Appeals, on remand and direction from the United States Supreme Court, announced its decision in the case of Orr v. Orr, supra. The United States Supreme Court, in Orr v. Orr, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979), found that Code 1975, §§ 30-2-51, -52, and -53 were unconstitutional. Those sections, which comprise the law regarding alimony determinations in divorce cases in Alabama, made no provision for an alimony award to a "needy husband," and, therefore, were found to be violative of the constitutional guarantee of equal protection.
The opinion of the Court of Civil Appeals, in adopting the holdings of the United States Supreme Court in Orr v. Orr, 440 U.S. 268, 99 S.Ct. 1102, and Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970), addressed the judicial options for remedying the constitutional defect:
"Where a statute is constitutionally infirm on the basis of underinclusiveness, a court may satisfy the Constitution's commands by either extending benefits to those excluded from the scope of its coverage or by invalidation of the statute in its entirety. Orr, supra; Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970). In Welsh, supra, the Supreme Court stated:
"`Where a statute is defective because of underinclusion there exist two remedial alternatives; a court may either declare it a nullity and order that its benefits not extend to the class that the legislature intended to benefit, or it may extend the coverage of the statute to include those who are aggrieved by exclusion....(Citations omitted).' 398 U.S. at 361, 90 S.Ct. at 1807-1808, Harlan, J., concurring.
"....
"The choice between invalidation of a statute or expansion of the scope of its applicability requires, of necessity, an ascertainment of the predominant legislative purpose underlying the statute's enactment. Beal [v. Beal, 388 A.2d 72 (Me.1978)]. That is to say, given the nature and substance of the statute, its relevant economic, social, and historical implications, can it be concluded that benefits should be terminated to the class of persons whom the legislature intended to benefit." Orr, at 374 So.2d 896-97.
Thus, in Orr, once the equal protection violation had been found, the court resorted to the "underinclusion" doctrine as the method of remedying the constitutional defect. As between the two options, the Court of Civil Appeals, on remand from the United States Supreme Court, elected to cure the "underinclusion" defect by including within the statute's operative effect the class discriminated against.
To be sure, the instant appeal is not a classical "underinclusion" case. Rather, the denial of equal protection here results from the direct conflict between a statute affording immunity to one kind of public hospital and four other statutes providing *1018 for public hospitals without immunity from tort liability; therefore, we cannot here simply judicially include a discriminated-against class within the embrace of those statutes that do not include the immunity provision. The only option remaining is to strike as unconstitutional the immunity provision of Article 5 (§ 22-21-137(2));[3] and we find that § 22-21-137(2) is entirely severable from the remainder of Article 5. See Ballew v. State, 292 Ala. 460, 296 So.2d 206 (1974), cert. den., 419 U.S. 1130, 96 S.Ct. 816, 42 L.Ed.2d 830 (1975).
Therefore, that portion of the trial court's judgment dismissing Chandler's tort claim is hereby reversed, and this cause is remanded for further proceedings in accordance with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
ALMON and ADAMS, JJ., concur.
SHORES and BEATTY, JJ., concur in the result.
TORBERT, C.J., and MADDOX, HOUSTON and STEAGALL, JJ., concur in part and dissent in part.
BEATTY, Justice (concurring in the result):
I concur in the result reached by the majority, viz., that the Hospital Authority is not immune from tort actions under Article 5 (Code 1975, § 22-21-130, et seq.). I write specially, however, to point out that this result is mandated by a clear reading of the language of Article 5. I see no need to reach the constitutional question addressed in the opinion by Justice Jones. Therefore, I concur in the result of Justice Jones's opinion, but not with its holding that the immunity provision of Article 5, supra, is unconstitutional.
All of the sections of Article 5, when read together, clearly point up that the intended functions of such an authority are with respect to the acquisition and provision of properties for use as hospital facilities. This intent is expressed in § 22-21-131, which sets forth the purpose and construction of Article 5:
"It is the intention of the legislature by the passage of this article to empower each incorporated city and town in the state to authorize the incorporation of one or more public corporations as political subdivisions of the state for the purpose of providing public hospital facilities, to invest each corporation organized under this article with all powers that may be necessary to enable it to accomplish such purposes, including the power to lease or operate its properties and to issue interest-bearing revenue bonds, and to grant to the municipality power to rent such public hospital facilities on a year-to-year basis and to pledge tax revenues to secure the rent payable therefor. This article shall be liberally construed in conformity with the said intent." (Emphasis added.)
The powers expressly granted to authorities organized under Article 5 are found in § 22-21-137:
"The authority shall have the following powers and capacities, among others specified in this article, together with all powers incidental thereto or necessary to the discharge thereof:
"(1) To have succession by its corporate name until dissolved as provided in section 22-21-154;
"(2) To maintain actions and have actions maintained against it by others in any form of litigation other than an action ex delicto, and to defend any litigation brought against it;
"(3) To have and use a corporate seal and to alter the same at pleasure;
"(4) To adopt and alter bylaws for the regulation and conduct of its affairs and business;
"(5) To acquire, whether by purchase, gift, lease, devise or otherwise, property of every description which the board may deem necessary or desirable to the acquisition, construction, reconstruction, improvement, enlargement, equipment, operation or maintenance of a project and to hold title thereto;

*1019 "(6) To construct, enlarge, improve, equip, maintain and operate one or more projects;
"(7) To borrow money for any of its corporate purposes and to sell and issue in evidence of such borrowing its interest-bearing revenue bonds as provided in this article;
"(8) To sell and issue refunding revenue bonds; "(9) To secure any of its bonds by pledge and indenture as provided in this article;
"(10) To appoint, employ and compensate such agents, architects and attorneys as the business of the authority may require;
"(11) To provide for such insurance as the board may deem advisable;
"(12) To invest any of its funds pending need therefor as provided in this article;
"(13) To contract, lease and make lease agreements respecting its properties, or any part thereof, as provided in this article; and
"(14) To sell and convey any of its properties that may have become obsolete or worn out or that may no longer be needed or useful in connection with, or in the operation of, any project; provided, that it shall not have the power to sell or convey any project substantially as a whole except as provided in this article."
There is nothing in the stated purpose (§ 22-21-131, supra), the stated powers (§ 22-21-137, supra), or any other section in Article 5, which even remotely suggests that the legislature intended that an Article 5 authority would be in the business of actually "running" a hospital; that is, be involved in its day-to-day operation or even involved in establishing hospital policies and procedures. It was not to such activities that the legislature granted immunity. Any other reading of Article 5 would require a construction so liberal, it would border on the absurd.
In this case, the Hospital Authority was clearly performing functions outside the scope of Article 5, and such functions are more particularly ascribable to Article 6 and Article 11 authorities, which the legislature has not given tort immunity. Therefore, the Hospital Authority cannot be immune from suit in tort in this case, where its non-Article 5 activities may have caused the plaintiff's injury.
SHORES, J., concurs.
MADDOX, Justice (concurring, in part; dissenting, in part).
I concur in that portion of the opinion which holds that, with respect to Chandler's contract claim for the wrongful death of her son, the holding in Geohagan v. General Motors Corp., 291 Ala. 167, 279 So.2d 436 (1973), is controlling.
As to the other holding, I must respectfully dissent from the majority opinion on these grounds:
(1) The equal protection claim was not adequately presented in the trial court, and there was no showing made that the legislature did not have a rational basis for granting immunity to this particular hospital.
(2) This Court has previously decided that hospitals organized under the same code section as was Huntsville Hospital were immune from suit.
(3) This Court has repeatedly upheld grants of immunity to public bodies and institutions, even though the effect is to deprive a person of a remedy otherwise available if the person was injured by a private person or entity.
(4) The legislature is the proper body to change or modify any immunity granted to hospitals organized in the class of which Huntsville Hospital is a member.

I

SECTION 22-21-137, ALA. CODE (1975), PROVIDES IMMUNITY FOR HUNTSVILLE HOSPITAL FROM AN ACTION FOR MEDICAL MALPRACTICE.
Huntsville Hospital is owned and operated by the Hospital Authority of the City of *1020 Huntsville. The Authority was formed pursuant to §§ 22-21-130 et seq, Alabama Code (1975), and is afforded immunity from actions ex delicto by § 22-21-137.
Although the plaintiff argues that the statutes under which the Hospital Authority was incorporated do not apply to the day-to-day operation of the hospital, and that the immunity afforded by § 22-21-137 applies only to "building and start-up operations of a hospital," and does not apply to "medical negligence," I am of the opinion that the statutes in question clearly provide for the day-to-day operation of Huntsville Hospital and the immunity provided by § 22-21-137 provides immunity for all actions ex delicto.
A review of the history of §§ 22-21-130 et seq. and the cases in which this Court has considered § 22-21-137, and its predecessor, support the Authority's position. The statutes in question were enacted in 1961. See Act 109, Ala. Acts 1961, p. 134. They were codified at Ala.Code 1940, Tit. 22, §§ 204(41a) to 204(41x) (1973 Supp.). Hospital authorities incorporated thereunder were granted immunity from actions ex delicto by § 204(41h). In at least three cases decided by this Court, § 204(41h) was considered to provide immunity for actions for medical negligence. In the first of those decisions, Green v. Hospital Building Authority of the City of Bessemer, 294 Ala. 467, 318 So.2d 701 (1975), the issue before the Court was whether plaintiff had stated a claim for breach of an implied contract sufficient to withstand defendant's motion for summary judgment. The suit was brought in contract for the obvious purpose of circumventing the immunity in tort granted by statute. According to plaintiff, a nurse employed by the defendant hospital closed a door on plaintiff's hand, resulting in a fracture to one of plaintiff's fingers. Citing § 204(41h), Justice Almon, writing for the Court, held, in part, as follows:
"Clearly, an action for negligence would be maintainable under these facts in the absence of statutory immunity. The election of remedies between an action ex delicto and ex contractu is permissible where the duties imposed by each (contract-tort) overlap. When a given act is both a breach of a contractual duty (expressed or implied) and a duty imposed by tort law, the plaintiff has the opportunity of electing his remedy. There are many instances in our law where these separate duties are concomitant. It is not the character of the act constituting the breach which necessarily determines the remedy; it is rather the character or nature of the duty or duties breached which determines the remedy or remedies available."
In Lorence v. Hospital Board of Morgan County, 294 Ala. 614, 320 So.2d 631 (1975), the issue before the Court was the correctness of the trial court's dismissal of the plaintiff's claim on the basis that the hospital enjoyed governmental immunity. The Court did not give a detailed explanation of the facts, stating only that plaintiff allegedly suffered damages due to the negligence of a hospital employee. This Court, in a split decision, held that the county hospital was not immune from plaintiff's suit and remanded the case for trial. Significant to the instant case is the Court's comparison between county and municipal hospitals. The Court reasoned that the legislature could have granted immunity to county hospitals for tort actions had it chosen to do so, noting that such immunity was expressly provided for municipal hospitals by § 204(41h). There, Justice Jones, writing for a divided court, held:
"We believe it is clear that the legislature had no intention to limit such suits to actions sounding in contract. Had it so intended, it could have so provided. This it did with regard to municipal hospitals by expressly providing that they are empowered `to sue others and to prosecute suits; to be sued by others in any form of litigation other than an action ex delicto.' Tit. 22, § 204(41h) (emphasis supplied.) No such limitation appears in the legislative language contained in Tit. 22, § 204, which authorizes the creation and operation of county hospital *1021 boards." 294 Ala. at 618, 320 So.2d at 634.
Finally, in Berry v. Druid City Hospital Board, 333 So.2d 796 (Ala.1976), the issue before the Court was again the sufficiency of plaintiff's allegations of breach of an implied contract. Plaintiff alleged that she was not properly strapped to a treatment table at the hospital and fell off it, causing permanent injury to her shoulder. The first sentence of the Court's opinion states that "[t]his is a suit against a hospital, protected from tort liability by governmental immunity (granted by statute), charging it with breach of implied contract." Id. at 798. The statute to which the Court referred was § 204(41h).
Title 22, §§ 204(41a) to 204(41x) of the 1940 Code, Recomp.1958, became §§ 22-21-130 to XX-XX-XXX in the 1975 Code. (See Table of Comparative Sections, Ala. Code (1975), Vol. 2.) Section 204(41h) became § 22-21-137.
In 1978, the legislature amended § 22-21-131 by broadening the powers given an authority incorporated thereunder to include the power to "operate its properties." See 1978 Ala. Acts, No. 409, p. 394. Previously, an authority organized under this section had only the power to lease its properties. See Ala.Code, Tit. 22, § 204(41a).

II

THIS COURT SHOULD NOT CONSIDER PLAINTIFF'S EQUAL PROTECTION CHALLENGE TO ALA.CODE (1975), § 22-21-137, BECAUSE THAT ISSUE WAS NOT RAISED IN THE COURT BELOW.
The only evidence in the record that a constitutional challenge was presented to the court below is contained in plaintiff's "Request for Leave to Respond to Motions of Defendants, Huntsville Hospital and Edward Boston, for Summary Judgment." There plaintiff quoted Article I, Sections 13 and 35 of the Constitution of Alabama, and the Fourteenth Amendment to the United States Constitution and asserted that § 22-21-137 violated each provision. This Court has repeatedly stated that constitutional questions not presented to the trial court will not be considered on appeal. In my opinion, the plaintiff failed to present evidence to the trial court that there was no rational basis for the grant of immunity to the Huntsville Hospital. See, e.g., Home Indemnity Co. v. Anders, 459 So.2d 836 (Ala.1984); Cooper v. Green, 359 So.2d 377 (Ala.1978); Smith v. State, 280 Ala. 241, 192 So.2d 443 (1966).

III

SECTION 22-21-137, ALA.CODE (1975), DOES NOT UNCONSTITUTIONALLY DEPRIVE PLAINTIFF OF A REMEDY, NOR DOES IT VIOLATE HER RIGHT TO EQUAL PROTECTION UNDER THE LAW.
In considering plaintiff's constitutional challenge to § 22-21-137, this Court must apply the following standard:
"[I]n passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government. All these principles are embraced in the simple statement that it is the recognized duty of the court to sustain the act unless it is clear beyond reasonable doubt that it is violative of the fundamental law."
Home Indemnity Co. v. Anders, 459 So.2d 836, 840 (Ala.1984), quoting Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 9,18 So.2d 810, 815 (1944). I am of the opinion that § 22-21-137 is not "violative of the fundamental law," and that this Court should uphold it.
Plaintiff strongly contends that she would have a remedy had her son been taken to a private hospital or to one organized pursuant to Ala.Code (1975), § 22-21-170. This fact is not a sufficient basis upon which to hold § 22-21-137 unconstitutional. In fact, the author of this opinion *1022 pointed out the distinction between the two statutes in Lorence, supra.
This Court has repeatedly upheld grants of immunity to public institutions or bodies even though the effect is to deprive an injured person of a remedy for his injuries. For example, both city and county school boards are immune from tort actions. See Enterprise City Board of Education v. Miller, 348 So.2d 782 (Ala.1977); Sims v. Etowah County Board of Education, 337 So.2d 1310 (Ala.1976). Municipal airports are immune from tort actions. See Scotti v. City of Birmingham, 337 So.2d 350 (Ala.1976); Ala.Code 1975, § 4-4-4. A public corporation formed pursuant to Ala. Code 1975, § 11-89-1, et seq., for the purpose of providing water, sewer disposal, and fire protection services is immune from tort liability in the furnishing of fire protection services. See Weeks v. East Alabama Water, Sewer, & Fire Protection District, 401 So.2d 26 (Ala.1981); Ala.Code 1975, § 11-89-15.
The immunity recognized in the foregoing cases has the obvious effect of depriving a party injured by actions of the institution in question of a remedy against that government body. Had the body in question in each case been a private entity, of course, or one as to which the legislature had provided for a remedy, a remedy would clearly be provided. This distinction has not been considered previously to be a basis for declaring the immunity granted to these institutions to be unconstitutional, and should not be so considered in this case. I cannot hold that § 22-21-137 is arbitrary or capricious. I believe that, based on this record, it is a valid exercise of the legislature's power to prescribe the circumstances under which a body it creates may sue or be sued.

IV

THE LEGISLATURE IS THE PROPER BODY TO CHANGE OR MODIFY THE IMMUNITY GRANTED BY ALA. CODE (1975), § 22-21-137.
In Alabama State Federation of Labor v. McAdory, 246 Ala. 1,18 So.2d 810 (1944), the Court stated a familiar principle:
"Another principle which is recognized with practical unanimity, and leading to the same end, is that the courts do not hold statutes invalid because they think there are elements therein which are violative of natural justice or in conflict with the court's notions of natural, social, or political rights of the citizen, not guaranteed by the constitution itself. Nor even if the courts think the act is harsh or in some degree unfair, and presents chances for abuse, or is of doubtful propriety. All of these questions of propriety, wisdom, necessity, utility, and expediency are held exclusively for the legislative bodies, and are matters with which the courts have no concern."
246 Ala. at 9, 18 So.2d at 815. The prerogative of the legislature in the field of immunity has been repeatedly recognized by this Court. See, e.g., Weeks v. East Alabama Water, Sewer & Fire Protection District, 401 So.2d 26 (Ala.1981); Jackson v. City of Florence, 294 Ala. 592, 320 So.2d 68 (1975).
The legislature authorized the creation of the Hospital Authority of the City of Huntsville. The legislature further prescribed that the Authority could not be sued for actions ex delicto. I am of the opinion that this Court should uphold § 22-21-137, and that any change in this section should come from the legislature.
My position on governmental immunity and governmental responsibility in tort is clearly set out in my dissenting opinion in Horton v. Northeast Ala. Regional Med. Ctr., Inc., 334 So.2d 885, 890 (Ala.1976), as follows:
"My position on the issue of `governmental immunity' in cases such as this one was first stated in Hutchinson v. Board of Trustees of University of Alabama, 288 Ala. 20, 256 So.2d 281 (1971), where I wrote as follows:
"`We must have a reasonable respect for the doctrine of stare decisis and the division of powers between the Executive, Legislative and Judicial *1023 branches of our government. Alabama may one day return to the rule of governmental responsibility with which we began as a State. The frequency of the appeals to this Court asking that the rule be changed is some evidence that the constitutional provision granting governmental immunity may have served whatever purpose it was intended to serve and maybe it should [now] be abandoned. But that is a question addressing itself to the Legislature in initiating and proposing an amendment to the Constitution. The Legislature already has power, without necessity for constitutional change, to adjust claims against the state.
"`The Legislature, when it deems necessary, can pass relief bills to compensate individuals who have been harmed. In fact, the Legislature now provides some relief to persons injured by appropriating money to the State Board of Adjustment for payment of claims against the State. Title 55, §§ 333-344, Code of Alabama, 1940 (Recomp.1958). See The Alabama State Board of Adjustment and the Law, 19 Ala.Law. 397 (1958). Therefore, a claimant is not completely without some recourse if he suffers injury because of the action of State officials in carrying out their duties.'
"In Smith v. Houston County Hospital Board, 287 Ala. 705, 255 So.2d 328 (1971), I specially concurred, stating:
"`I believe this appeal to us for the second time points out the futility of attempting to widen the crack made in the "governmental immunity" wall by Paul v. Escambia County Hospital Board, 283 Ala. 488, 218 So.2d 817 (1969).
"`My own personal view is that this Court should have never insulated county operated hospitals from tort liability in cases involving paying patients on the ground that counties operating such hospitals are engaged in a "governmental function." But it has, and not on just one occasion, but on several. See Jenkins v. Houston County Hospital Board, 284 Ala. 180, 223 So.2d 583 (1969); Thompson v. Druid City Hospital Board, 279 Ala. 314, 184 So.2d 825 (1966); Clark v. Mobile County Hospital Board, 275 Ala. 26, 151 So.2d 750 (1963); Garrett v. Escambia County Hospital Board, 266 Ala. 201, 94 So.2d 762 (1957); Moore v. Walker County, 236 Ala. 688, 185 So. 175 (1938); Laney v. Jefferson County, 249 Ala. 612, 32 So.2d 542 (1947).
"`As I said as author of the opinion in Hutchinson v. University Board of Trustees, (decided November 11, 1971), 288 Ala. 20, 256 So.2d 281, the question of governmental responsibility is a pressing one, but the Legislature is the body which will have to deal with it in view of the interpretations which have been heretofore rendered with regard to governmental immunity.'
"The Legislature has not acted and this Court has been called upon once again to distinguish between actions ex contractu and actions ex delicto. The problem which we here face was created by Paul v. Escambia County Hospital Board, 283 Ala. 488, 218 So.2d 817 (1969), which followed the questionable doctrine set out by a divided court in Vines v. Crescent Transit Company, 264 Ala. 114, 85 So.2d 436 (1956)."
TORBERT, C.J., and HOUSTON and STEAGALL, JJ., concur.

On Application for Rehearing
PER CURIAM.
In its brief in support of its application for rehearing, which by its express terms is addressed solely to the concurring opinion of Justice Beatty (concurred in by Justice Shores), the Hospital Authority, by way of footnote, suggests that, in the event Justices Shores and Beatty decline to grant rehearing, "the opinion of Justice Jones (concurred in by Justices Almon and Adams) be revised and extended so as to indicate that the Authority did [after the *1024 1978 Amendment], have corporate power to operate the Hospital on a daily basis."
Justices Jones, Almon, and Adams indicated this to be the case; thus (again quoting from the footnote in the rehearing brief), "they, like Chief Justice Torbert, [and] Justices Maddox, Houston, and Steagall, also are of the opinion that the statute clearly enables the Authority to operate the Hospital." To be sure, because Justices Jones, Almon, and Adams reached the constitutional issue, they believed that this conclusion was implicit in the opinion.
OPINION EXTENDED; APPLICATION FOR REHEARING OVERRULED.
JONES, ALMON and ADAMS, JJ., concur.
SHORES and BEATTY, JJ., concur in the result.
TORBERT, C.J., and MADDOX, HOUSTON and STEAGALL, JJ., dissent.
NOTES
[1] We have copied this section exactly as it appears in the Code, but we note that it contains an obvious inadvertence: the last four words should read "governmental or sovereign immunity."
[2] We acknowledge that it is not necessary to find the rational basis in the language of the statute. It is sufficient if a rational basis exists and can be perceived in the spirit and operation of the statute.
[3] We are not here called upon to invalidate any portion of Article 5 other than § 22-21-137(2).